In re GRAND JURY WITNESS.

Robert MOLINA, Appellant,

v.

UNITED STATES of America, Appellee.

No. 77–1715.

United States Court of Appeals,
Ninth Circuit.

April 26, 1977.

William A. Brockett, Jr., argued, Steven M. Kipperman, Kipperman, Shawn, Keker & Brockett, San Francisco, Cal., for appellant.

Edmund D. Lyons, Sp. Atty., Michael L. Sterrett, argued, U. S. Dept. of Justice, San Francisco, Cal., for appellee.

Before MERRILL, GOODWIN and KENNEDY, Circuit Judges.

MERRILL, Circuit Judge:

This appeal is taken from an order holding appellant in contempt for refusal to comply with an order directing him to appear and produce documents in response to a grand jury subpoena duces tecum.[1] Ap-

---

1. The documents specified were:
"The weekly lists prepared by you to show the distribution of gratuities, either by cash or check, to yourself and other officers or employees of the San Francisco Hilton, for the period 1972 to the present; all books of account, rec-

pellant contends that production of the documents would tend to incriminate him and that the documents are his personal papers.

Appellant is banquet manager for the San Francisco Hilton Hotel. Under him are four supervisors. With this staff appellant manages the details of all banquets held at the hotel. Agreements between the hotel and the banquet customers are made by the hotel's catering office. Pursuant to collective bargaining agreements with the union representing the waiters and busboys, banquet agreements provide for a gratuity of 15 per cent. This gratuity is added to the banquet's bill, collected by the hotel and then divided, 75 per cent. to the waiters and busboys, and 25 per cent. to supervision personnel. Quite frequently, at the hotel's suggestion, the customer agrees to an additional 1 per cent. gratuity as an incentive for providing top service. When this occurs the extra 1 per cent. over the 15 per cent. called for by bargaining contract goes to supervision.

The hotel's accounting office disburses the collected gratuities as follows: 75 per cent. of the contractual (15 per cent.) gratuity is by check sent to the union, with a list provided by appellant as to the waiters and busboys entitled to share in it. Payment to those persons is then made by the union. The share for supervision—25 per cent. of the 15 per cent. gratuity and the additional 1 per cent. gratuity when obtained—is paid out by the accounting office pursuant to a list of those entitled to share submitted by appellant. From July to November, 1976, for some reason a slight departure from this procedure was followed: As to the extra 1 per cent. gratuity, the amount was paid by the accounting office to appellant in cash and was distributed by him in cash, rather than by checks through the office.

The grand jury is investigating possible violations of federal labor laws, including 29 U.S.C. § 186, which restricts payments made by employers to employee bargaining representatives. Appellant was called before the grand jury and testified to the manner in which banquet gratuities were disbursed. Appellant also testified that he has maintained records of the disbursements. These include the lists provided by appellant to the hotel's accounting office and to the union, and the receipts received by him as to cash payments he distributed. The grand jury then issued a subpoena duces tecum for all of these records.

Appellant refused to produce the documents called for, claiming his fifth amendment privilege. He asserts that the records sought would tend to incriminate him with respect to federal income tax obligations. After hearing before the district court he was ordered to produce. Upon his failure to comply he was held in contempt. The contempt order was stayed to allow for appeal to this court, and this appeal was duly taken.

■ In contending that production of the demanded records is protected by the fifth amendment, appellant emphasizes that these records were prepared by him, are in his possession and are claimed to be self-incriminatory. The combination of these three factors, he contends, suffices to bring the records within the scope of the privilege. We cannot agree. The essential question presented, as we view the case, is whether the records were appellant's personal papers or instead were those of "a collective entity which are in his possession in a representative capacity." *Bellis v. United States*, 417 U.S. 85, 88, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974). *See also United States v. Marlin*, 546 F.2d 825, 826 (9th Cir. 1976).

In *United States v. White*, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944), the Court stated:

ords, ledgers and documents showing the distribution of gratuities in cash, receipts, vouchers, and signatures of those receiving cash gratuities from you, including specifically a book containing names of those receiving cash gratuities, the amount received, date received and the signature of those receiving the cash, all for the period 1972 to the present."

"Since the privilege against self-incrimination is a purely personal one, it cannot be utilized by or on behalf of any organization, such as a corporation. Moreover, the papers and effects which the privilege protects must be the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity. But individuals, when acting as representatives of a collective group, cannot be said to be exercising their personal rights and duties nor to be entitled to their purely personal privileges. Rather they assume the rights, duties and privileges of the artificial entity or association of which they are agents or officers and they are bound by its obligations. In their official capacity, therefore, they have no privilege against self-incrimination. And the official records and documents of the organization that are held by them in a representative rather than in a personal capacity cannot be the subject of the personal privilege against self-incrimination, even though production of the papers might tend to incriminate them personally. Such records and papers are not the private records of the individual members or officers of the organization." (citations omitted).

To the same effect is *Wilson v. United States,* 221 U.S. 361, 380–85, 31 S.Ct. 538, 55 L.Ed. 771 (1911). *See also United States v. Radetsky,* 535 F.2d 556, 568–69 (10th Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976); *Coson v. United States,* 533 F.2d 1119, 1120 (9th Cir. 1976); *United States v. Sourapas,* 515 F.2d 295, 299 (9th Cir. 1975).

By virtue of his position as banquet manager, appellant was, by the hotel, given the responsibility of carrying out the hotel's obligations under the collective bargaining agreement to see that gratuities due the waiters and busboys were properly distributed. Further, there can be no doubt that the hotel, having agreed with banquet customers and having collected from them the gratuities due to supervision personnel, owed a responsibility to pay such personnel what was due them. In providing the accounting office with lists from which checks were made and in distributing cash, appellant was acting as paymaster-agent of the hotel. The records are clearly those of the hotel corporation.

The fact that appellant not only was the custodian of the records, but also prepared them himself, does not serve to render them personal.[2] No matter who prepared them, no matter in whose custody they may be found, the fact that they are records of the corporation and not the private papers of appellant precludes the assertion of a personal privilege against their production. In *Wilson v. United States, supra,* the president of a corporation was required to produce copies of letters written by him as president, despite his assertion that they would incriminate him personally.[3]

Appellant also contends that the documents sought are outside of the permissible scope of the grand jury investigation. We find this contention to be without merit.

The order is affirmed. The stay heretofore entered herein will terminate pursuant to its terms May 2, 1977.

---

**2.** *See Fisher v. United States,* 425 U.S. 391, 410 n. 11, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

**3.** In *Wilson,* the subpoena was directed to the corporation rather than to the officer personally. However, in *Dreier v. United States,* 221 U.S. 394, 31 S.Ct. 550, 55 L.Ed. 784 (1911), the result was held to apply as well where the subpoena was directed to the individual custodian.