In the Matter of a WITNESS BEFORE the GRAND JURY.

UNITED STATES of America, Plaintiff-Appellee,

v.

Barry S. MARLIN, Defendant-Appellant.

No. 76–3262.

United States Court of Appeals, Ninth Circuit.

Nov. 19, 1976.

Rehearing and Rehearing En Banc Denied Feb. 8, 1977.

Arthur J. Crowley (argued), Los Angeles, Cal., for plaintiff-appellant.

Terry W. Bird, Asst. U.S. Atty. (argued), Los Angeles, Cal., for defendant-appellee.

Before BROWNING, CHAMBERS and ANDERSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

This is an appeal from an order entered on October 5, 1976, adjudging the appellant in contempt of court for refusing to produce Grand Jury subpoenaed records and documents of an entity known as Belgrave Company and a bank account known as the Barry S. Marlin Business Account.

The central issue involved in this appeal is a factual determination as to whether Belgrave Company and the Barry S. Marlin Business Account are part and parcel of the "organized institutional activity" of appellant's joint ventures and limited partnerships. The district court held that the above-named entities were an integral part of such "organized institutional activity" and therefore the subpoenaed books and records of those entities were not entitled to the protection of the Fifth Amendment.

FACTS

Appellant is an attorney who, as an investment counselor, promoted, sold, and operated investment partnerships and joint ventures. These various limited partnerships and joint ventures were established to purchase and operate individual investment properties. To conduct these activities for his investors, appellant set up various business entities. Property Acquisition and De-

velopment, Inc., was established to acquire properties and, in turn, to sell the properties to the limited partnerships. First Kensington Corporation was initially established to act as the general partner on many of the various limited partnerships. Subsequently, after appellant personally became the general partner in the limited partnerships, First Kensington Corporation became responsible for paying the expenses and overhead for appellant's investment operations. Belgrave Company was established as a management company to handle the properties that appellant either leased or managed for the limited partnership.

Appellant's various limited partnerships were established pursuant to sophisticated partnership agreements. Under these agreements appellant became a general partner and also provided that Property Acquisition and Development, Inc. would sell properties to the partnerships or joint ventures. The partnership agreement further provided that upon acquisition of such property, the partnership would enter into a Management Agreement with Belgrave Company for the purpose of having Belgrave Company manage the property. Each partner was given the right under the partnership agreement to examine the books and records of his individual limited partnership.

Mr. Ralph J. Rigden, a C.P.A. formerly employed by appellant as controller for the limited partnerships, joint ventures, Belgrave Company, Property Acquisition and Development, Inc. and First Kensington Corporation, testified, over objection, as to the nature of the books and records and to the transactions carried on by Belgrave Company. Mr. Rigden testified that, during the relevant time period involved herein, Belgrave Company leased from the limited partnerships or managed approximately sixteen properties. Mr. Rigden or his staff of 5 or 6 employees prepared and maintained the various business records for Belgrave Company[1] which depicted the op-

eration of these properties. Mr. Rigden testified that, to his knowledge, appellant did not make any of the entries into the books and records of Belgrave Company.

Mr. Rigden further testified that First Kensington Corporation, Property Acquisition and Development, Inc., and Belgrave Company had an average negative cash flow which approximated $100,000.00 a month. As a result of this deficit in cash, whenever Mr. Rigden had to have additional funds to meet the distribution, he would call appellant and request that funds be advanced to meet the deficit. A check would then be issued to Mr. Rigden, normally from Barry S. Marlin, a Professional Law Corp., or Barry S. Marlin. These funds were then deposited into the Barry S. Marlin Business Account. This Barry S. Marlin Business Account would then normally issue a check to Belgrave Company. Belgrave Company would then make the lease payments to the joint venture or limited partnership account, who would, in turn, make the distribution direct to the partner.

Mr. Rigden further testified that the Barry S. Marlin Business Account was in existence when Mr. Rigden began his employment. He testified that this account was a checking account maintained by his accounting department which encompassed the payment of small bills and also was used as a conduit to receive monies from Barry S. Marlin to funnel these monies to the entities that required the cash, as described above.

Upon this factual background, appellant has claimed throughout that Belgrave Company was appellant's sole proprietorship and that the Barry S. Marlin Business Account was his personal checking account. Appellant contends that the records of these accounts were not held in a representative capacity and were not part of any other entity, whether joint venture, partnership or corporation. As such, appellant

---

1. Mr. Rigden testified that his department maintained the following records: paid and unpaid vouchers; cancelled checks, cash receipts and disbursements journal; all-inclusive general ledger; profit and loss statements for Belgrave Company, as well as the sub-entity properties; accounts payable, and payroll records for the employees.

contends that he may invoke his personal privilege against self-incrimination to justify his refusal to produce the subpoenaed books and records.

The leading case is *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974), which requires a case-by-case analysis of the factual situation to determine whether the subpoenaed documents are privileged. The key focus is to determine whether the activity whose records are subpoenaed "represents organized, institutional activity as contrasted with wholly individual activity." *United States v. White,* 322 U.S. 694, 701, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542 (1944). If the factual determination reveals that "organized institutional activity" is sought to be protected, then there is no Fifth Amendment right.

■ In the present case the books and records of Belgrave Company were prepared and maintained by Mr. Rigden and his staff. The Barry S. Marlin Business Account, contended by appellant to be his personal checking account, was also controlled by Mr. Rigden and his staff. Appellant did not personally make any entries into nor maintain the books and records. In short, these accounts were maintained by appellant's business and accounting staff in the same manner as the various joint venture accounts.[2] Thus, there can be no expectation of privacy asserted by the appellant, a factor deemed relevant in *Bellis, supra,* 417 U.S. at 92, 94 S.Ct. 2179.

■ Appellant, simply by establishing the accounts in his own name, cannot thereby invoke Fifth Amendment privileges. To allow such practice would have this court overlook the well-thought-out and highly-developed means employed to integrate appellant's complex business enterprises, a

process which still enabled appellant to assert a sole proprietorship label. The records of Belgrave Company and the Barry S. Marlin Business Account were inextricably related with the activities of the various joint enterprises and limited partnerships. The district court so found,[3] and this factual finding must be accepted by this court unless clearly erroneous. Rule 52(a), F.R.Civ.P. We cannot say that it was.

■ Appellant also contends that the subpoena duces tecum was unreasonable and overly broad in its quest for documents and as such was violative of the Fourth Amendment. Our review of the scope and language of the subpoena indicates that the designation of financial records by general terms used in the accounting, business, and finance fields is sufficiently definite and reasonable. *Oklahoma Press Publishing Company v. Walling,* 327 U.S. 186, 202–209, 66 S.Ct. 494, 90 L.Ed. 614 (1945); *United States v. Gurule,* 437 F.2d 239 (10th Cir. 1970); *United States v. Reno,* 522 F.2d 572 (10th Cir. 1975).

The admission into evidence of the testimony of Mr. Ralph J. Rigden was proper and no error was committed. Appellant's *stare decisis* argument is not persuasive nor applicable to the facts of this case.

Accordingly, the order of the district court adjudging appellant in contempt of court is AFFIRMED in all respects.

The district court's order staying confinement pending disposition of this appeal is REVOKED 21 days from the date of filing this opinion.

---

2. On these facts there is no testimonial compulsion for the grand jury witness "to restate, repeat or affirm the truth of the contents of the documents sought." *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976). Cf. *In the Matter of the Grand Jury Subpoena of Fred R. Witte Center Glass No. 3, Witte v. United States,* 544 F.2d 1026, 1976 (9th Cir.)

3. It is better practice for the district court to enter its written findings of fact and conclusions of law rather than to rely on oral findings and conclusions announced in court. This procedure makes the task of appellate review easier and the district court's record on appeal much better.