In the Matter of GRAND JURY EMPANELLED February 14, 1978.

Appeal of UNITED STATES of America.

No. 78–2543.

United States Court of Appeals, Third Circuit.

Argued Feb. 20, 1979.

Decided April 27, 1979.

Robert J. Del Tufo, U. S. Atty., James A. Plaisted (argued), Asst. U. S. Atty., Newark, N. J., for appellant.

Raymond R. Connell (argued), Dwyer, Connell & Lisbona, Montclair, N. J., for appellee.

Before ROSENN, GARTH and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

The issue on this appeal is whether the owner of a business may assert a Fifth Amendment privilege when a *subpoena duces tecum* requiring the production of business records is served on both the owner himself and on his employee who prepared and maintained those records. The government served *subpoenas duces tecum* on Dominick Colucci, the owner of Colucci Excavating and Trucking, and on Marion DeMato, his office manager. On Colucci's motion, the district court quashed both *subpoenas*, concluding that the Fifth Amendment shielded Colucci from the compelled disclosure of his business records. However, the Fifth Amendment does not provide a shield for Colucci's business records when disclosure of those records results from a *subpoena* served on DeMato. We hold, therefore, that the district court improperly denied to the government the business records which it sought from DeMato, and we reverse.

## I

Colucci Excavating and Trucking ("CET") performs construction and demolition services under contract with public authorities, municipalities, and private concerns. The business has been operated un-

der that name for some twenty years. The parties have stipulated that in 1976, CET had assets of approximately $642,000 and that its annual gross receipts averaged $337,000 in each of the years 1972 through 1975. During recent years, it has employed seven to fourteen persons, one of whom is Marion DeMato. The parties have stipulated that DeMato holds the position of "office manager". The record reveals that DeMato has also signed contracts as "Secretary-Treasurer" of CET. The petitioner, Dominick Colucci, owns CET [1] and is its chief executive. On June 27, 1978, Marion DeMato testified before a grand jury in the District of New Jersey. She stated that her responsibilities as office manager included the preparation of two types of records: "job folders" and billing records. She made up "job folders" which contained all of the documents which she had prepared or received pertaining to a particular project.[2]

She also prepared bills which she mailed to customers, maintaining a file which contained records of all payments made on each project. The job files for projects which had been completed and the billing files for past years were kept in a closet in her office. During her grand jury testimony, she was ordered by the grand jury Foreman to produce the job folders for all work performed by CET for public authorities for the period from January 1, 1972 through December 31, 1977 and the billing files for the years 1972 through 1977.

On July 5, 1978, a *subpoena duces tecum* was served on Colucci, directing him to appear before the grand jury on July 11, 1978 with the job files for all work performed by CET from January 1, 1971 through December 31, 1976, and the billings

---

1. The government contends that Colucci has represented to other persons that CET is a corporation. But it has not offered evidence that a certificate of incorporation has been issued to CET, nor has any finding to that effect been made. On this record, and despite Exhibit E (Appendix 131) which arguably indicates a corporate status, we must proceed on the assumption that CET is a sole proprietorship.

2. DeMato described the contents of the job folders as follows:

> Well, it is just a plain folder and I will have, you know, agreements in there, letters to utilities for shut offs of utilities, permits, everything that goes with that job. Bills we have to pay out, anything corresponding with it so it's all in one file.

folders for the years 1972 through 1977.[3] A *subpoena duces tecum* directed to "any responsible officer" of CET was served on DeMato on July 5, directing her to produce those same documents before the grand jury on July 11, 1978. The date for production of the records by Colucci and DeMato was extended to August 29, and on August 28 Colucci moved in the district court to quash the *subpoena*. Colucci's motion pertained only to the *subpoena duces tecum* served on him, but during oral argument on that motion, Colucci apparently moved to quash the June 27, 1978 Foreman's order to DeMato and the *subpoena duces tecum* served on DeMato.

In response to Colucci's motion, the government filed an affidavit (with appended financial reports) describing the business of CET; Colucci stipulated to the accuracy of the affidavit. The government also filed a transcript of DeMato's testimony before the grand jury in which she described the documents demanded by the government as well as her responsibility for preparing and maintaining those documents. Colucci offered no testimony or evidence in support of his motion to quash.

Subsequent to oral argument, the district court on October 4, 1978 entered an order quashing both *subpoenas* as well as the order of the grand jury Foreman directed to DeMato. The court also endorsed a consent order which required Colucci's attorney to collect and hold the documents sought in the *subpoenas* until final disposition of the government's appeal, so that these records would be available in the event that we reached a conclusion different from the district court's.

The government has appealed from the order quashing the *subpoenas duces tecum* and the Foreman's order.

## II

 Although neither the government nor Colucci questioned our jurisdiction to review an order quashing a grand jury *subpoena duces tecum*, we asked that supplementary briefs be filed addressing the question of whether appellate jurisdiction exists. In its supplementary brief, the government contends that appellate jurisdiction exists under either 28 U.S.C. § 1291 (1976) or 18 U.S.C. § 3731 (1976).

Colucci, however, urges us to invoke the judicially created limitation on government appeals from orders entered in criminal cases. In *DiBella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962), the Supreme Court held that the government could not appeal from an order granting a motion to suppress evidence, where that motion was made after charges had been filed even though an indictment had not yet been returned. Recognizing that it was effectively precluding any opportunity for the government to secure appellate review of such orders, the Supreme Court declared:

> What disadvantage there be springs from the historic policy, over and above the constitutional protection against double jeopardy, that denies the Government the right or appeal in criminal cases save as expressly authorized by statute. *United States v. Sanges*, 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed. 445; *United States v. Dickinson*, 213 U.S. 92, 102–103, 29 S.Ct. 485, 53 L.Ed. 711; *Carroll v. United States*, 354 U.S. 394, 400–403 and n. 9–12, 77 S.Ct. 1332, 1 L.Ed.2d 1442. No such expression appears in 28 U.S.C. § 1291, and the Government's only right of appeal, given by the Criminal Appeals Act of 1907, 34 Stat. 1246, now 18 U.S.C. § 3731, is confined to narrowly defined situations not relevant to our problem. Allowance of any further right must be sought from Congress and not this Court. *Carroll v. United States, supra,* 354 U.S., at 407–408, 77 S.Ct. 1332.[4]

Colucci's argument, however, fails to consider the measures enacted by Congress in

---

**3.** The *subpoena duces tecum* directed Colucci to produce before the grand jury "all files for all jobs conducted or performed by Colucci Excavating & Trucking for the period from January 1, 1971 up to and including December 31,

1976 and also the folders of billings for each of the years from 1972 through 1977."

**4.** 369 U.S. at 130, 82 S.Ct. at 660.

response to *DiBella* and other court decisions narrowly construing the government's right of appeal in criminal cases. In particular, the 1968 and 1971 amendments to the Criminal Appeals Act, 18 U.S.C. § 3731, permit the government to appeal from an "order . . . excluding evidence . . in a criminal proceeding." We hold that 18 U.S.C. § 3731 provides the jurisdictional predicate for review of the district court's order in this case. Furthermore, we observe that if the Criminal Appeals Act was not applicable here, jurisdiction would nevertheless exist under 28 U.S.C. § 1291.

### A

The 1971 amendment added the following provision to the Criminal Appeals Act, 18 U.S.C. § 3731:

. . . . .

An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts [sic] suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

. . . . .

The provisions of this section shall be liberally construed to effectuate its purposes.

Three requirements must be satisfied before an appeal may be brought by the government under this provision: (1) The order must "suppress or exclude" evidence (2) in a "criminal proceeding;" and (3) a certificate must be filed in the district court.[5] We are satisfied that these requirements have been met by the present appeal.

The legislative history of § 3731 mandates that a broad and liberal construction be given to its provisions. Subsequent to *DiBella*, Congress in 1968 amended § 3731 to provide for government appeals from orders granting motions to suppress evidence. The 1968 amendment was narrowly drawn and restricted appeals to those orders granting "motion[s] to suppress" which were "made before the trial of a person charged with a violation of any law of the United States."[6] When the Criminal Appeals Act was revised in 1971, Congress deleted the provisions which confined government appeals to only pretrial orders granting suppression motions. Under the 1971 amendment, the government's right of appeal was expanded to include all orders "suppressing *or excluding* evidence . . in a *criminal proceeding*" (emphasis added). To ensure that the courts would not restrict this right of appeal, Congress also added a provision requiring that § 3731 be "liberally construed." The purpose of this provision is explained in the Senate Report on the amendment:

The amended Criminal Appeal Act is intended to be liberally construed so as to effectuate its purpose of permitting the Government to appeal . . . from all suppressions and exclusions of evidence in criminal proceedings, except those ordered during trial of an indictment or information. S. 3132 [the 1971 amendment] places on the face of section 3731 an explicit expression of this intent, in view of the restrictive judicial interpretations of congressional intent which have resulted from the histories of the earlier

---

5. The government has filed the required certificate in the district court.

6. Following the 1968 amendment, the eighth paragraph of § 3731 provided that the government could appeal:

From an order, granting a motion for return of seized property or a motion to suppress evidence, made before the trial of a

person charged with a violation of any law of the United States, if the United States attorney certifies to the judge who granted such motion that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of the charge pending against the defendant.

Pub.L. 90–351, 18 U.S.C.A. § 3731 (1969).

versions of section 3731 despite strong indications in the debate on the 1907 act that it should be broadly interpreted.[7]

In light of this legislative direction to construe broadly the government's right of appeal, this Court has held that orders which do not, "strictly speaking," suppress evidence but which have the "practical effect" of excluding evidence from a proceeding, are within the ambit of § 3731. *United States v. Beck*, 483 F.2d 203, 206 (3d Cir. 1973), *cert. denied*, 414 U.S. 1132, 94 S.Ct. 873, 38 L.Ed.2d 757 (1974); *United States v. Helstoski*, 576 F.2d 511, 520–21 (3d Cir. 1978), *aff'd*, —— U.S. ——, 99 S.Ct. 2432, 61 L.Ed.2d 12 (1979). The order from which the government has appealed in this case undeniably has the effect of excluding CET's records from the grand jury's proceedings.[8] The other concerns which this Court identified in *Beck* as limitations on § 3731 appeals are not present here: an ongoing trial will not be interrupted,[9] and Colucci has not suggested that an appeal would place him twice in jeopardy.

■ The second requirement under § 3731 is that the order must have the effect of excluding evidence "in a criminal proceeding." The question here is whether a grand jury proceeding is a *criminal* proceeding within the meaning of § 3731. We conclude that it is.

Congress adopted the language "criminal proceeding" in the 1971 amendment—superseding language in the 1968 amendment which limited appeals to orders entered in pretrial proceedings—in order to broaden the circumstances under which the government could appeal from orders "excluding"

---

7. S.Rep.No.91 1296, 91st Cong., 2d Sess. 18 (1970) (footnotes omitted). "The provision requiring liberal construction of 3731 reverses the practice of narrowly interpreting the Government's right to appeal in criminal cases applied, for example, in *Carroll v. United States* and *United States v. Hines*." *Id.* at 37 (footnote omitted).

8. An order quashing a *subpoena duces tecum* does not preclude the government from introducing the documents *if* it can obtain them by some other legal method. Colucci has not alleged that the government can obtain the subpoenaed documents without issuing a *subpoena*, and we decline to engage in such speculation. *See In re Grand Jury Proceedings* (U.S. Steel-Clairton Works), 525 F.2d 151, 155 n. 15 (3d Cir. 1975). Therefore, on this record, we must conclude that the "practical" effect of this order will be to exclude these documents from the grand jury investigation. Since it is the practical and not the technical effect of the order with which we are concerned under § 3731 (*see United States v. Beck*), we are satisfied that this is an "order . . . excluding evidence."

9. Although this concern is not expressed in § 3731, the Supreme Court has recognized the danger that an appeal taken during a grand jury investigation may disrupt and delay that proceeding. In *Cobbledick v. United States*, 309 U.S. 323, 325, 60 S.Ct. 540, 84 L.Ed. 783 (1940), the Supreme Court expressed the view that to allow an *individual* to appeal from an order *refusing* to quash a *subpoena* would encourage "leaden-footed" judicial administration.

However, this concern is of much less significance when it is the government which is the appellant. The Supreme Court made this clear in *Cobbledick* when it observed that "[due] regard for efficiency . . . must not be carried so far as to deny all opportunity for the appeal contemplated by the statutes." *Id.* at 329, 60 S.Ct. at 543. In a footnote to this statement, the Supreme Court discussed *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921), in which it heard an appeal by the government from an order requiring the return to an individual of documents held by the government for presentation to a grand jury:

In this Court the action of the district court was treated as final, and hence subject to review. But the practical considerations there involved were entirely different from those which must govern here. In *Burdeau v. McDowell the action of the district court was itself an interruption of the grand jury's inquiry; appeal by the Government did not halt the "orderly progress" of the inquiry.* *Id.* at 329 n. 6, 60 S.Ct. at 543 n. 6 (emphasis supplied). *See also In re Grand Jury Proceedings* (U.S. Steel-Clairton Works), 525 F.2d 151, 156 n. 21 (3d Cir. 1975).

Furthermore, the government, unlike the person who is served with a *subpoena*, will seldom have an interest in using the appellate process to delay a grand jury investigation; hence, it will only appeal from those orders of the district court which, in its view, seriously impede the grand jury investigation. Finally, § 3731 requires the United States attorney to certify to the district court "that the appeal is not taken for purpose of delay."

evidence.[10] One of the problems perceived by the draftsmen of the 1971 amendment was that "[a]ppealability of suppressions ordered in proceedings other than pretrial hearings is . . . unclear and unduly limited." Senate Comm. on the Judiciary, Amendments to the Criminal Appeals Act, S.Rep.No.91–1296, 91st Cong., 2d Sess. 5 (1970). In response to this problem, one of the "principal changes" effected by the amendment was to "make the Government's right to appeal an order suppressing evidence applicable to all criminal proceedings, including probation revocation hearings, not merely to pretrial suppressions." *Id.* at 2.

In view of the liberal interpretation which Congress has mandated for § 3731, we have no doubt that a grand jury proceeding is a "criminal proceeding" for this purpose. The grand jury is governed by the Rules of Criminal Procedure. Its return of an indictment is a necessary step in the federal criminal justice system,[11] and ordinarily it cannot be used to gather evidence for civil cases.[12] Furthermore, in *Di-Bella*, the Supreme Court declared that "[p]resentations before . . . a grand jury . . . are parts of the federal prosecutorial system leading to a criminal trial."[13] *See also Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940). In deciding questions pertaining to appellate jurisdiction, this circuit and

others have adopted the view that the grand jury is a criminal proceeding. In *Smith v. United States*, 377 F.2d 739, 742 (3d Cir. 1967), we held that, although the motion to suppress was made before the grand jury had returned an indictment against the individuals, "the prosecution was nevertheless in esse" at the time that they were called to testify before the grand jury.[14] The Sixth Circuit has also held that a grand jury investigation is a "criminal proceeding" within the meaning of § 3731. *United States v. Calandra*, 455 F.2d 750, 752 (6th Cir. 1972).

Therefore, we conclude that § 3731 provides the jurisdictional predicate for an appeal by the government from an order quashing a grand jury *subpoena duces tecum.*

**B**

■ If, however, § 3731 does not provide jurisdiction in this court, we are satisfied that 28 U.S.C. § 1291 would. The limitation on government appeals described in *DiBella* applies only in criminal cases. Therefore, if an order quashing a grand jury *subpoena* cannot be said to have been entered in a "criminal proceeding" within the meaning of § 3731, the order would then be subject to the usual § 1291 test for finality. If we were to assume that there is no "criminal proceeding" against Colucci to which his

10. In the context of another statute, the Ninth Circuit has interpreted a change in statutory language from "trial" to "criminal proceeding" as embracing grand jury investigations. *Bacon v. United States*, 449 F.2d 933, 940 (9th Cir. 1971) (material witness statute).

11. *DiBella v. United States*, 369 U.S. 121, 131, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962).

12. In *Bacon v. United States*, 449 F.2d 933, 939 40 (9th Cir. 1971), the court said:
"The Fifth Amendment guarantees the right to indictment by grand jury "for a capital, or otherwise infamous crime." The grand jury carries out its investigative function with the specific purpose of determining whether probable cause exists to institute criminal prosecutions. See *Costello v. United States*, 1956, 350 U.S. 359, 362, 76 S.Ct. 406, 100 L.Ed. 397. Its decision to return an indictment throws the full weight of the crim-

inal process against persons suspected of crime. It is incongruous to say that a proceeding before the body charged by the Constitution with initiating criminal prosecutions does not amount to a proceeding in a criminal case prior to verdict. The Supreme Court apparently agreed with this proposition when it stated that a grand jury investigation is a "criminal case" for purposes of extending the Fifth Amendment privilege against self-incrimination to grand jury witnesses. See *Counselman v. Hitchcock*, 1892, 142 U.S. 547, 562, 12 S.Ct. 195, 35 L.Ed. 1110."

13. 369 U.S. at 131, 82 S.Ct. at 660.

14. *Cf. In re Grand Jury Proceedings (U.S. Steel-Clairton Works)*, 525 F.2d 151, 155 (3d Cir. 1975) (viewing *DiBella* as applicable to an appeal from an order entered during a grand jury proceeding).

motion to quash might be related, we would then have to view the district court's proceeding as plenary,[15] and its order of October 4, 1978 as a "final decision" of the government's right to compel Colucci to produce the subpoenaed document.[16]

Colucci argues, however, that we should apply to the government's appeal the familiar rule that an individual may not appeal from an order *refusing* to quash a subpoena. *See United States v. Ryan*, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940). But the Supreme Court's holdings in those decisions were predicated on the availability of other avenues of review (*see Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918)) and the effect of delay on grand jury proceedings. This rationale has no application when it is the *government*—rather than an *individual*—which is appealing from an order *granting* a motion to quash. An order refusing to quash does not finally decide the government's right to compel production of the documents, because the

individual may ignore the *subpoena* and contest its validity in a contempt proceeding. The government, on the other hand, lacks this avenue to secure review; therefore, an order quashing a *subpoena* is a final order which determines that production of the documents may not be compelled.[17] Moreover, as previously indicated (*see* note 9 *supra*), the government has an interest in avoiding appeals which will unnecessarily delay grand jury proceedings. Therefore, neither the holding nor the rationale of *Ryan* requires us to dismiss this appeal.

If we had concluded that this order was not entered in a "criminal proceeding," thus placing it outside both § 3731 and the *DiBella* limitation on government appeals in criminal cases, we would nevertheless have concluded that the order quashing the *subpoenas duces tecum* was a final order under § 1291. Having been satisfied that we have jurisdiction, we turn then to the merits of the government's appeal.

15. In *United States v. Calandra*, 455 F.2d 750 (6th Cir. 1972), Calandra, who had been subpoenaed to testify before the grand jury, moved to suppress certain evidence. The district court ordered the evidence suppressed and authorized Calandra to refuse to answer questions which were based on that evidence. The court of appeals held that the government could appeal from that order:

"In the present case it is clear that since no indictment was pending, the motion to suppress was heard and determined in an independent plenary proceeding."

*Id.* at 753.

16. In *In the Matter of the Grand Jury Empaneled January 21, 1975*, 536 F.2d 1009 (3d Cir. 1976), several individuals, who had not been indicted or arrested, were represented by one attorney when they appeared before a grand jury investigating possible violations of federal criminal statutes by those individuals. We held that an order disqualifying their counsel was appealable under § 1291 as a "collateral order," and we observed:

If anything, the argument for appellate jurisdiction in circumstances such as these is stronger than that in an arguable *Cohen* situation. Here, there is as yet no "case" in the usual sense of the word to which the order may be deemed collateral—no "case" of which there will be eventual, albeit deferred, review.

*Id.* at 1011 n. 1. Here too there is as yet no "criminal case" against Colucci to which the order quashing the *subpoena* may be deemed collateral. He has yet to be indicted or arrested.

17. In *In re Grand Jury Proceedings* (U.S. Steel-Clairton Works), 525 F.2d 151 (3d Cir. 1975), we held that there was jurisdiction under § 1291 of a government appeal from an order staying grand jury proceedings, observing that "[i]n this case, the Government cannot follow the traditional avenue to immediate appellate review; namely, resistance to the order and submission to a possible adjudication of contempt":

*Ryan, DiBella* and *Cobbledick* noted that in certain circumstances immediate appeals from district court orders respecting grand jury proceedings were necessary to insure that all opportunity for review was not foreclosed. *See United States v. Ryan*, 402 U.S. 530, 533, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); *DiBella v. United States*, 369 U.S. 121, 124, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); *Cobbledick v. United States*, 309 U.S. 323, 328, 329 & n. 6, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *discussing Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921) *and Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918).

*Id.* at 156 n. 20 & n. 21.

## III

Since *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886), the Fifth Amendment has been interpreted as a limitation on government use of the *subpoena duces tecum* to compel an individual to produce his private papers. Recently, in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), and *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), the Supreme Court has held that Fifth Amendment protection of private papers is limited to those cases in which the individual asserting the privilege is compelled to make a testimonial communication which may be incriminating. The interface of these concepts is presented on this appeal in which we must determine whether the sole proprietor of a business may assert a Fifth Amendment privilege to quash *subpoenas duces tecum* served on him and on his employee, where the *subpoenas* require each of them to produce for inspection by the grand jury the proprietor's records which were prepared and held by the employee.

### A

■■ The government contends that the Fifth Amendment affords no protection to the records of CET, because that enterprise has, by virtue of its longevity and size, taken on the character of an "organized, institutional activity." *Bellis v. United States*, 417 U.S. 85, 92, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). The Supreme Court has held that the Fifth Amendment does not protect the records of corporations, *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911), unincorporated associations, *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), or partnerships, *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). The government argues that those decisions confine the Fifth Amendment's protection to the personal records of individuals, and that CET—which has been in business for 20 years and has substantial sales, assets

and payroll—is an organization which cannot avail itself of this "personal" protection.

The government would have us distinguish between sole proprietorships which are owned and operated by an individual or his family, and sole proprietorships which are large organizations with many employees, like CET. While that distinction may have merit in a different connection,[18] the decisional law does not support the government's argument here. *Bellis* did not hold that the records of any organized and sustained activity are outside the ambit of the Fifth Amendment. Instead, the Supreme Court has drawn a bright line between organizations which have "a recognizable juridical existence apart from [their] members" and those which do not. *See In re Grand Jury Investigation*, 483 F.2d 961, 962 (3d Cir. 1973), *aff'd Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). An individual who holds records in a representative capacity for a collective entity (e. g. a corporation, union or partnership) may not assert a Fifth Amendment privilege when he is compelled to produce those records. On the other hand, a sole proprietorship has no legal existence apart from its owner, and such records *may* be protected from disclosure by the Fifth Amendment.

CET is a sole proprietorship, wholly owned by and having no existence at law apart from Colucci.[19] Therefore, the decisional law dealing with records held by "representatives of a collective group" does not defeat Colucci's claim of privilege.

### B

■ When the Supreme Court decided in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) that the Fifth Amendment prevented the government from forcing an individual to produce documents which might incriminate him, it viewed the Fifth Amendment as protecting "the sanctity of a man's home and the privacies of life." *Id.* at 630, 6 S.Ct. at 532.

---

**18.** *See* pp. 864 865 *infra.*

**19.** *See* note 1 *supra.*

In the recent cases in which it has considered the scope of the Fifth Amendment's protection against compulsory disclosure of personal records, the Supreme Court has rejected the *Boyd* view of the Fifth Amendment as a safeguard of "privacy". It has adopted instead a construction "moored" to the language of the amendment: "[N]o person . . . shall be compelled in any criminal case to be a witness against himself." In *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the Court declared that the text of the Fifth Amendment restricts its operation to cases in which an individual "is compelled to make a *testimonial* communication that is incriminating". *Id.* at 408, 96 S.Ct. at 1579 (emphasis in original); *see also Andresen v. Maryland*, 427 U.S. 463, 473–75, 96 S.Ct. 2737, 49 L.Ed.2d 629 (1976). Therefore, before it may quash a *subpoena duces tecum* directing the production of personal records, a court must be satisfied that three requirements have been met: (1) *compulsion* of a (2) *testimonial communication* that is (3) *incriminating*.[20]

■ We are satisfied that the Foreman's order and the *subpoena* served on DeMato, while they may require her to produce documents that incriminate Colucci, do not compel Colucci to make a testimonial communication. In reaching this conclusion, we have focussed on the order to DeMato and the *subpoena* served on DeMato, because they call for the production of documents identical to the documents which are the subject of the *subpoena* served on Colucci himself. As a practical matter, once having compelled production through DeMato, the government can have virtually no interest in the *subpoena* served on Colucci. In this connection, we observe that DeMato has not asked that the *subpoena* or Foreman's order be quashed, nor has she asserted that production of the documents would incriminate her. It is her employer, Colucci, who has asked that the Foreman's order and *subpoena* served on DeMato be quashed on the ground that *her* production of the documents might incriminate *him*. Colucci's claim of privilege *vis a vis* the *subpoena* and order directed to DeMato fails on two distinct grounds.

First, the order and the *subpoena duces tecum* compel *DeMato* to produce the documents. In no way do they compel *Colucci* to testify, to make any declarations or to produce or identify any documents. The Supreme Court has declared that the Fifth Amendment is a personal right which may be exercised only by the person against whom governmental compulsion is directed: "The Court has held repeatedly that the Fifth Amendment is limited to prohibiting the use of 'physical or moral compulsion' exerted on the person asserting the privilege . . . "[21] Therefore, Colucci's right under the Fifth Amendment was not infringed by the order and *subpoena* served on DeMato, and his motion to quash those orders properly should have been denied.

Second, the *subpoena* served on DeMato can not be said to have forced Colucci to make any "testimonial communications".[22] The service and enforcement of that *subpoena* has not subjected Colucci to "the cruel trilemma of self-accusation, perjury or contempt."[23] Although the subpoenaed

---

20. This standard, and its application by the Supreme Court to the circumstances in *Fisher*, was anticipated to a great extent by the concurring opinion filed by Judge Gibbons in *United States v. Fisher*, 500 F.2d 683, 694 (3d Cir. 1974):

> What remains, I suggest, is the test announced by Justice Brennan in *Schmerber v. California, supra*, 384 U.S. 757, 86 S.Ct. 1826 —compulsion of evidence of a testimonial or communicative nature. It would seem, then, that for fifth amendment purposes a subpoena duces tecum should be enforced even for papers owned and possessed by the witness so long as (1) the fact of his possession was

not of evidentiary significance or his production was not used for that evidentiary purpose, (2) their mere production did not require his testimony, and (3) they could be authenticated through some other witness.

21. *Fisher v. United States*, 425 U.S. 391, 397, 96 S.Ct. 1569, 1574, 48 L.Ed.2d 29 (1976).

22. *Id.* at 408, 96 S.Ct. 1569.

23. *Murphy v. Waterfront Commission*, 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678 (1964).

records may contain entries made by Colucci, those entries in the records necessarily would have been made prior to service of the *subpoena*; hence, the government's *subpoena* could not have compelled such entries.[24] It is true that a *subpoena duces tecum* will compel the act of producing the documents,[25] which act itself may be deemed a communication having testimonial significance as an admission that the subpoenaed records exist and that they are authentic. But here, it is DeMato, rather than Colucci, who is required to produce the records and thereby admit their existence and authenticity. Thus, whatever "communication" is compelled, it is by DeMato and not Colucci.

Therefore, we conclude that under the standard announced in *Fisher*, Colucci's right—not to be compelled to give incriminating testimony—was not violated either by the order or the *subpoena duces tecum* served on DeMato.

## C

For the reasons which we have discussed, *Fisher* requires that we reverse the district court's order quashing the order and *subpoena* served on DeMato, *unless* the employment relationship between the person subpoenaed (DeMato) and the person asserting the privilege (Colucci) presents circumstances or considerations not involved in *Fisher*. Colucci contends that, as DeMato's employer, he should be regarded as possessing the records which DeMato prepared and held for him as his employee.

■ Colucci's ownership of the records does not by itself give rise to constitutional

---

**24.** In *Fisher v. United States*, 425 U.S. 391, 410 n. 11, 96 S.Ct. 1569, 1580 n. 11, 48 L.Ed.2d 29 (1976), the Court declared that:

> The fact that the documents may have been written by the person asserting the privilege is insufficient to trigger the privilege, *Wilson v. United States*, 221 U.S. 361, 378, 31 S.Ct. 538, 543, 55 L.Ed. 771, 778 (1911). And, unless the Government has compelled the subpoenaed person to write the document, cf. *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed. 889 (1968); *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), the fact that it was written by him is not controlling with respect to the Fifth Amendment issue. Conversations may be seized and introduced in evidence under proper safeguards, *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Osborn v. United States*, 385 U.S. 323, 87 S.Ct. 429, 439, 17 L.Ed.2d 394 (1966); *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); *United States v. Bennett*, 409 F.2d at 897 n. 9, if not compelled. In the case of a documentary subpoena the only thing compelled is the act of producing the document and the compelled act is the same as the one performed when a chattel or document not authored by the producer is demanded. McCormick § 128, p. 261.

*See also, Andresen v. Maryland*, 427 U.S. 463, 475, 96 S.Ct. 2737, 49 L.Ed.2d 269 (1976); *Fagan v. United States*, 545 F.2d 1005, 1007 (5th Cir. 1977).

In his concurring opinion in *United States v. Fisher*, 500 F.2d 683, 694 (3d Cir. 1974), Judge Gibbons declined to express any view regarding the application of his test (*see* note 20 *supra*) when the subpoenaed documents were written by the individual asserting the Fifth Amendment privilege. However, the Supreme Court, when it affirmed *Fisher*, indicated that this factor by itself could not shield the documents from *subpoena*, because no compulsion operated on the subpoenaed individual to either write or testify to the contents of the documents; the sole compulsion was to furnish the document to the government. 425 U.S. 391, 410 n. 11, 96 S.Ct. 1569, 48 L.Ed.2d 29, *see supra*. We recognize that the act of furnishing the documents may be incriminating and may have testimonial significance, if the individual who is subpoenaed is the only person who can authenticate the particular documents. That issue is not before us on this record. So far as the record here reveals, the business records which the government has subpoenaed were prepared by DeMato (or at least by persons other than Colucci). The record is explicit with respect to the billing records. As to these, DeMato stated in her grand jury testimony that she had prepared them. The record is somewhat less clear with respect to the "job folders." These documents apparently were assembled by DeMato from papers which she had received or prepared. Her description of the contents of the files does not include any letters written by Colucci, and Colucci has not alleged in his brief that he personally prepared any of the particular documents. Furthermore, the government has stated that it is satisfied that DeMato can authenticate the subpoenaed documents, and that it will not rely on testimony or acts by Colucci to show the authenticity of the documents.

**25.** *Fisher v. United States*, 425 U.S. 391, 410 n. 11, 96 S.Ct. 1569, 48 L.Ed.2d 29 (1976).

protection against disclosure if the records are in the possession of another person. The Supreme Court has several times declared that possession, not ownership, is determinative of who may exercise a Fifth Amendment privilege with respect to subpoenaed documents.[26] It is the holder of the papers, rather than the owner, who is subjected to governmental compulsion by a *subpoena duces tecum*, and therefore only the holder of the papers may assert that the *subpoena* violates his right under the Fifth Amendment.

A more difficult question is presented by Colucci's contention that he is in "constructive possession" of all documents held by his employee acting as an employee. In *Couch,* the Supreme Court stated in dictum that the owner of papers in the possession of another person might in some circumstances have "constructive possession" of his documents.[27] The cases cited by the Supreme Court, however, involved individuals whose *personal* papers were stored on the premises of a corporation; the employees of the corporation had not prepared the papers and had no access to them.[28] In *United States v. Guterma,* for example, an individual placed his "personal" records in a safe in the office of a corporation where he was employed. The court held that he could raise Fifth Amendment objections to a *subpoena,* finding it "most significant" that he was the only person who knew the combination to the safe and who thus had access to the papers.[29] Here, by contrast, DeMato not only had full access to the papers but prepared many of them herself; furthermore, we are dealing with the records of a business and not papers pertaining to Colucci's personal affairs.

When the Supreme Court concluded in *Couch* that the taxpayer did *not* have constructive possession of his accountant's workpapers, one factor which it considered was that the accountant was not the taxpayer's employee nor did he work in the taxpayer's office.[30] DeMato is certainly Colucci's employee and does work in his offices. While we might find Colucci's "constructive possession" argument of more interest if *Couch* was the Supreme Court's definitive decision regarding this concept, we observe that the discussion in *Couch* was dictum, and the Supreme Court formulated no standard for bringing "constructive possession" within the Fifth Amendment privilege.[31] Subsequently in *Fisher,* the court

---

**26.** *See United States v. Fisher,* 500 F.2d 683, 689 (3d Cir. 1974), *aff'd, Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 29 (1976); *Couch v. United States,* 409 U.S. 322, 336, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); *Witte v. United States,* 544 F.2d 1026, 1028 (9th Cir. 1976).

**27.** 409 U.S. at 333–34, 93 S.Ct. 611.

**28.** *United States v. Guterma,* 272 F.2d 344 (2d Cir. 1959); *Schwimmer v. United States,* 232 F.2d 855 (8th Cir.), *cert. denied,* 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956).

**29.** 272 F.2d at 346; *see also In re Horowitz,* 482 F.2d 72, 86 n. 19 (2d Cir. 1973) (observing that similar circumstances were involved in *Schwimmer*).

**30.** 409 U.S. at 334, 93 S.Ct. 611.

**31.** In *In re Horowitz,* 482 F.2d 72, 86–87 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 26 (1973), the court refused to find that the owner of the subpoenaed documents had constructive possession, observing that:

As for the "constructive possession" situation, Mr. Justice Powell neither defined the term in a Fifth Amendment context nor decided what the result would be when the definition was met. Given his insistence on the personal nature of the privilege, it seems highly unlikely that he was viewing the term as broadly as courts have done in other contexts, e. g., in applying the inference of knowledge of foreign importation formerly arising from possession of heroin under 21 U.S.C. § 174, see *United States v. Hernandez,* 290 F.2d 86, 90 (2 Cir. 1961). That the majority meant what it said in stating that it was merely leaving the question open appears from its refusal, 409 U.S. at 333–334 n. 16, 93 S.Ct. 611, either to approve or disapprove a constructive possession claim on the facts of *Schwimmer v. United States, supra,* 232 F.2d 855, or the decision of this court in *United States v. Guterma,* 272 F.2d 344 (2 Cir. 1959), where the facts were much stronger for the claimants than here. Mere recognition that the privilege *might* be held to apply in some cases where the claimant is not in possession cannot be taken, as appellants urge, to tell us whether and in what circumstances it will. As Mr. Justice Holmes said in *Johnson v. United States, supra,* 228 U.S. at 458, 33 S.Ct. 572, 57 L.Ed. 919,

did not refer to the absence of an employment relationship between the owner of the records and the person who was subpoenaed. Instead, it relied on its literal interpretation of the scope of the constitutional protection of personal papers; the court rejected the taxpayer's Fifth Amendment claim with respect to records held by his attorney because "the documents sought were obtainable without personal compulsion on the accused".[32] Furthermore, the Supreme Court expressly rejected the argument that the existence of an "agency" relationship enabled the taxpayer to make a Fifth Amendment claim with respect to papers in his attorney's possession: [33]

> The fact that the attorneys are agents of the taxpayers does not change this result. *Couch* held as much, since the accountant there was also the taxpayer's agent, and in this respect reflected a long-standing view. In *Hale v. Henkel*, 201 U.S. 43, 69–70, 26 S.Ct. 370, 377, 50 L.Ed. 652, 663 (1906), the Court said that the privilege "was never intended to permit [a person] to plead the fact that some third person might be incriminated by his testimony, even though he were the agent of such person . . . . [T]he Amendment is limited to a person who shall be compelled in any criminal case to be a witness against *himself.*" (Emphasis in original.) "It is extortion of information from the accused himself that offends our sense of justice." *Couch v. United States, supra,* at 328, 93 S.Ct. 611. Agent or not, the lawyer is not the taxpayer. The taxpayer is the "accused," and nothing is being extorted from him.[34]

■ Therefore, under the analysis adopted by the Supreme Court in *Fisher,* the existence of an employment relationship between Colucci and DeMato is a relevant consideration only if the *subpoena* served on the employee will compel the employer to make a "testimonial communication". *See In re Witness Before a Grand Jury,* 546 F.2d 825, 827 n. 2 (9th Cir. 1976).

On the record before us, we can only conclude that this is not our situation. DeMato testified before the grand jury on the very day that she was ordered to produce the records. She stated that she assembled the papers which she prepared or received pertaining to a particular project in a job file, and that she kept the files in a closet in her office. She also testified that she kept in her office a billings file for each year, recording the bills which she had prepared and the payments received. In addition, she testified that Colucci was seldom present at CET's offices, working instead at the job sites. Her testimony was that he operates the business from his car, using a two-way radio to communicate with the office, and delegates management of the office to DeMato.

Colucci offered no affidavits or other evidence disputing DeMato's testimony with respect to her responsibility, preparation or maintenance of the subpoenaed records, nor did he attempt to contradict DeMato's testimony in his brief. On this record, we must assume that it was DeMato who was responsible for and who had possession of the job files and billings folders. Therefore, no affirmative act by Colucci—let alone a "testimonial communication"—was required in order for DeMato to comply with the *subpoena.*

■ Quite simply, an employer's rights under the Fifth Amendment are not compromised by a *subpoena duces tecum* served on his employee to whom he has delegated exclusive responsibility for preparation and custody of business records. The Fifth Amendment is a personal right, and may be exercised only under the conditions specified in *Fisher,* which have not been satisfied here.

---

"Courts proceed step by step." (emphasis in original and footnotes omitted).

**32.** 425 U.S. at 398, 96 S.Ct. at 1574.

**33.** *Id.* at 397–98, 96 S.Ct. 1569.

**34.** Although Colucci has the right to control the actions of his employee, he does not have the authority to prohibit DeMato from complying with a *subpoena.* As we said in *In re Grand Jury,* 541 F.2d 373, 377 (3d Cir. 1976), "the grand jury's subpoena supplies the legal authority for the . . . production of the records."

On a more fundamental plane, our holding reflects our conclusion that the grand jury order and *subpoena* served on DeMato do not implicate the basic concerns of the Fifth Amendment. The Fifth Amendment has traditionally shielded only "private papers." [35] Although the Supreme Court has declined to hold that the Fifth Amendment guarantees against "any invasion of privacy," [36] the Court in *Fisher* left open the question of whether a different result might have been reached if the government had subpoenaed the taxpayer's "private papers". [37]

**35.** *See, e. g., Bellis v. United States*, 417 U.S. 85, 91, 94 S.Ct. 85, 40 L.Ed.2d 678 (1974); *United States v. Fisher*, 500 F.2d 683, 690 (3d Cir. 1974), *aff'd, Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 29 (1976).

**36.** *Andresen v. Maryland*, 427 U.S. 463, 477, 96 S.Ct. 2737, 49 L.Ed.2d 269 (1976); *see also Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 29 (1976). *See* pp. 859 860 *supra*.

**37.** 425 U.S. at 414, 96 S.Ct. 2737.

**38.** *In United States v. Osborn*, 561 F.2d 1334, 1338–39 (9th Cir. 1977), the court held that the Fifth Amendment did not shield an individual from producing his business documents and records even if they were in his possession. In that case the government had served IRS summonses on an attorney requiring him to produce certain business records which his clients had delivered to him. The attorney refused, and the government moved in the district court to enforce the summonses. The clients then intervened to assert that the documents were shielded by the attorney-client privilege and by the Fifth Amendment. The district court denied enforcement of the summonses with respect to some of the documents, and the government appealed. The court of appeals reversed. It accepted the district court's finding that the documents had been delivered to the attorney for his use in performing legal services, and observed that under *Fisher* such documents would be shielded by the Fifth Amendment to the same extent as if they were in the possession of the client. The court then held that the Fifth Amendment did not shield the records because "[t]he documents—corporate financial statements, an agreement for sale, telephone records, billing records, and a few business letters—are business documents analogous to the accountant's workpapers in *Fisher*":

But even this observation can be of little assistance to Colucci. As we have earlier noted, the record reveals that the documents at issue here were records of a "business" rather than a "personal" nature, which were neither prepared by Colucci, nor limited to his personal use. [38]

In such circumstances, it is evident that the subpoenaed records were not Colucci's "private papers," and the *subpoena* did not invade a "private enclave" which Colucci had created and as to which he had a reasonable expectation of privacy. *Bellis, supra* at 91. [39] It is undisputed that Colucci

These documents, like those in *Fisher*, were not prepared by the clients, nor do they contain any testimonial declarations by the clients. So far as the record shows, the documents were voluntarily prepared. *See Fisher v. United States*, 425 U.S. at 409, 96 S.Ct. 1569. The production of these documents, business documents, involves no testimonial self-incrimination. Any possible tacit concessions made by the act of producing the documents, e. g., that such documents exist and are possessed or controlled by the client and that the client believes they are the documents described by the subpoena, do not rise, under circumstances shown in this record, to the level of "testimony" within the protection of the Fifth Amendment. Id. at 410–13, 96 S.Ct. 1569; *see Matter of Fischel*, 557 F.2d 209 (9th Cir. 1977); *Matter of Witness Before the Grand Jury*, 546 F.2d 825 (9th Cir. 1976); *Matter of Fred R. Witte Center Glass No. 3*, 544 F.2d 1026 (9th Cir. 1976).

We hold that the documents would not have been protected by the clients' Fifth Amendment privilege when still in their possession,[9] and, therefore, that these documents are not protected by the attorney-client privilege.

[9] We thus need not decide the issue left open in *Fisher* as to whether the Fifth Amendment would shield the taxpayer from producing his own tax records in his possession since they were his private papers. *Fisher v. United States*, 425 U.S. at 414, 96 S.Ct. 1569.

*Id.* at 1339.

**39.** In deciding whether Colucci had constructive possession of the subpoenaed documents, we think it relevant to consider the extent to which he limited access to his papers, *see In re Horowitz*, 482 F.2d 72, 86–87 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 26 (1973); *United States v. Guterma*, 272 F.2d 344, 346 (2d Cir. 1959), and consequently had a protectible expectation of privacy in them, *see*

had given access to these records to at least one other person,[40] DeMato. Indeed, her duties involved the preparation, custody, and use of these documents. At the least, it can be said that Colucci had no expectation of privacy *vis a vis* DeMato, an individual who was under no enforceable obligation of confidentiality. *See Matter of Witness Before the Grand Jury*, 546 F.2d 825, 827 (9th Cir. 1976). In this situation Colucci could have had no expectation of privacy which would warrant our holding that he had constructive possession of the documents held by DeMato.

### D

Colucci's final contention is that DeMato cannot comply with the grand jury order and the *subpoena* because he, Colucci, had "sole and exclusive possession" of the subpoenaed documents "at the time [the district court judge] heard the motion to quash." Br. for Appellee at 5, 6. The record, however, shows that on the same day that DeMato was ordered by the grand jury to produce these records, she testified that the records were in her desk and in a closet in her office. Colucci presented no evidence to contradict this testimony. Nor does he deny the truth of her testimony. Instead, Colucci merely asserted in his brief that he had exclusive possession of the records at a later time: when the district court heard the motion to quash.

■ Accepting Colucci's assertion in his brief as true,[41] it represents no more than a statement that Colucci had removed the papers from DeMato's possession *after* she was ordered by the grand jury to produce them. The question then is whether an

employer may take affirmative steps to prevent his employee from complying with a *subpoena*. We conclude that he may not.

Once the grand jury's order and *subpoena duces tecum* were served on DeMato, she was under a duty to produce the papers for the government. Therefore, once that official compulsion had been placed on DeMato, Colucci could not rightfully take possession of the records for the purpose of preventing the performance of DeMato's duty called for by the *subpoena*.

■ This conclusion follows from the principle that "possession" is determined as of the time that governmental compulsion is exerted to produce the documents, rather than at the time that the compulsion is contested in the courts. In *Couch v. United States*, 409 U.S. 322, 329 n. 9, 93 S.Ct. 611, 616 n. 9, 34 L.Ed.2d 548 (1973), the Supreme Court declined to consider whether the taxpayer's transfer of his papers from his accountant to his attorney improved his Fifth Amendment claim:

Technically the order to produce the records was directed to petitioner's attorney since, after the summons was served upon the accountant, he ignored it and surrendered the records to the attorney. But constitutional rights obviously cannot be enlarged by this kind of action. *The rights and obligations of the parties became fixed when the summons was served, and the transfer did not alter them. See United States v. Zakutansky*, 401 F.2d 68, 72 (CA7 1968), cert. denied, 393 U.S. 1021, 89 S.Ct. 628, 21 L.Ed.2d 562 (1969); *United States v. Lyons*, 442 F.2d 1144 (CA1 1971).

*Andresen v. Maryland*, 427 U.S. 463, 475 76, 96 S.Ct. 2737, 49 L.Ed.2d 269 (1976); *Bellis v. United States*, 417 U.S. 85, 91–92, 96 S.Ct. 2737, 49 L.Ed.2d 269 (1974); *Matter of Witness Before the Grand Jury*, 546 F.2d 825, 827 (9th Cir. 1976); *In re Grand Jury Proceedings*, 576 F.2d 706 (9th Cir. 1978).

**40.** Whether other employees and persons not employed by CET had access to these documents is not revealed by the record. The record does reveal, however, that the accountant for CET had regular access to some of the documents, and that third persons had original-

ly prepared some of the papers which DeMato had received.

These circumstances stand in stark contrast to *Guterma*, where the individual claiming Fifth Amendment protection went to great lengths to ensure that the documents, which were not in his possession, could not be viewed by others. *See also In re Horowitz*, 482 F.2d 72, 86–87 & nn. 19 & 20 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 26 (1973).

**41.** Not even this contention was supported by a sworn affidavit.

(emphasis supplied). *See also In re Grand Jury Impaneled January 21, 1975,* 541 F.2d 373, 376 n. 1 (3d Cir. 1976).

The authorities cited by the Supreme Court explain the application of this principle. In *United States v. Zakutansky,*[42] a *subpoena duces tecum* was served on Zakutansky, an accountant, seeking papers which he had prepared for his client, Johnson. Zakutansky transferred the papers to Johnson, who was then served with a *subpoena.* The situation then was that "Zakutansky was unable to comply because he no longer had the papers and Mr. Johnson refused to comply under a claim of the Fifth Amendment privilege."[43] The Court of Appeals for the Seventh Circuit affirmed an order enforcing the *subpoena,* finding that "the transfer of the papers was a mere attempt to thwart the government investigation."[44]

 We are confronted with a similar situation. At the time that DeMato was ordered to produce the records, she could produce them without violating Colucci's right under the Fifth Amendment. But Colucci apparently took steps thereafter to thwart DeMato's compliance with the order by removing the papers which had theretofore been continuously in her possession. Colucci would have us hold that this action entitles him to exercise a Fifth Amendment right which he could not otherwise have exercised. But under *Couch,* the relevant consideration is whether the Fifth Amendment afforded Colucci any protection *as of the time when DeMato was first ordered to produce the papers.* We have previously concluded that at that time the grand jury order and *subpoena* served on DeMato did

not compel any testimonial communication by Colucci. That being so, no right of Colucci's under the Fifth Amendment was violated.

## IV

The order quashing the grand jury's order and *subpoena duces tecum* served on DeMato will be reversed. The order quashing the *subpoena duces tecum* served on Colucci will be reversed insofar as it pertains to documents which were in DeMato's possession on *or* after June 27, 1978, the date of the grand jury order.[45]

---

**42.** 401 F.2d 68 (7th Cir. 1968), *cert. denied,* 393 U.S. 1021, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969).

**43.** *Id.* at 70.

**44.** *Id.* at 72.
The "rightful possession" test advanced by some of the courts does not apply here because at the time the papers were transferred the transferor was under a moral, if not legal, obligation to provide them to the government.

**45.** In light of this disposition, we find it unnecessary to extend our discussion to the *subpoe-*

na served on Colucci, for as we have pointed out, the *subpoena* served on DeMato calls for the production of the same documents as the *subpoena* served on Colucci. We have no doubt that DeMato will be able to comply with the *subpoena,* because the district court, having foreseen that we might reach a different result, required counsel for Colucci to retain all of the subpoenaed documents pending this appeal, which documents can now be made available to DeMato.