In the Matter of the GRAND JURY EM-
PANELED ON JANUARY 17, 1980.

No. Misc. 80–8.

United States District Court,
D. New Jersey.

Jan. 22, 1981.

Rogovin & Golub by Benjamin J. Golub,
New York City, for petitioner.

William W. Robertson, U. S. Atty. by
Michael M. Milner, Asst. U. S. Atty., New-
ark, N. J., for respondent.

## OPINION

CLARKSON S. FISHER, Chief Judge.

Petitioner, Alan Goldenberg, moves this court to quash a subpoena requesting certain documents relating to his brokerage business on the theory that since the business is not an ordinary partnership and the requested materials are personal papers, producing them would violate his Fifth Amendment privilege against self-incrimination. Petitioner also argues that production of the papers would be an implied authentication that they exist. Moreover, Goldenberg submits that since the business entity became a sole proprietorship after February 28, 1977, the Fifth Amendment unquestionably protects production of the papers after this date.

This case evolves out of the following factual scenario: On November 7, 1980, a Grand Jury subpoena to produce records of Trademark Commodities Company (Trademark) from September 1974 to date directed to "any responsible officer of Trademark Commodities Company" was served upon Alan Goldenberg. However, the government concedes that the materials desired span only the period from September 1974 to February 28, 1977, at which time the Trademark partnership of Alfred Willette and Goldenberg was dissolved. Thereafter, Goldenberg continued the business as a sole proprietor.

Trademark was and is a floor brokerage business. The government claims that the books and records requested are necessary to determine whether they reveal transactions related to a scheme to defraud the United States by evading the payment of taxes on a substantial portion of the income received by Goldenberg and Willette. The scheme was allegedly accomplished by concealing income through shifting profits into accounts other than those held by Goldenberg and Willette, according to the government's submissions.

■ There is no question that the Fifth Amendment applies only to natural individuals, *United States v. White*, 322 U.S. 694, 698, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944), and not to corporations or partnerships. *Id.* at 699, 64 S.Ct. at 1251; *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). Thus, papers and documents that fall within the purview of the Fifth Amendment privilege must be private property of the person claiming the privilege, or at least in his possession in a purely personal capacity. *White, supra*, 322 U.S. at 699, 64 S.Ct. at 1251. Consequently, individuals, when acting as representatives of a collective group, cannot be exercising personal rights and duties and have no Fifth Amendment privilege. This is true even where the papers held in a representative capacity would incriminate the holder personally. *White, supra*, at 699, 64 S.Ct. at 1251.

■ The test for whether one is acting as a representative for a collective group considers if "the particular type of organization has a character so impersonal in the scope of its membership and activities that it cannot be said to embody or represent the purely private or personal interests of its constituents, but rather to embody their common or group interests only." *White, supra*, at 701, 64 S.Ct. at 1252. Judge Whipple, in *Matter of Grand Jury Proceedings*, 399 F.Supp. 668 (D.N.J.1975), relied on the following factors, *inter alia*, in holding that the Fifth Amendment privilege was not applicable to a law firm's records: the maintenance of a partnership bank account; the use of partnership stationery; the fact that the firm held itself out to the public as a partnership; and the filing of separate partnership tax returns. *See Matter of Grand Jury Impaneled January 21, 1975*, 3 Cir., 529 F.2d 543, 547 fn. 6, *cert. denied, sub nom., Freedman v. United States*, 425 U.S. 992, 96 S.Ct. 2203, 48 L.Ed.2d 816 (1976) (where the Third Circuit noted with approval the Whipple test). Here, Trademark via Willette and Goldenberg had a formal partnership agreement with business offices; permanent employees; an employer identification number for reporting and withholding employee payroll and Social Security taxes; a partnership checking account; commodity brokerage accounts;

books and records; partnership stationery; and filed federal, New York State and New York City partnership income tax returns. Clearly, Trademark's papers from September 1974 to February 28, 1977 are properly subpoenaed. However, dissolution on February 28, 1977, after which time Goldenberg ran the firm as a sole proprietor, ends the period in which records are subject to subpoena. See *Matter of Grand Jury Empanelled February 14, 1978,* 597 F.2d 851, 859 (3d Cir. 1979). Thus, the subpoena's overbreadth must be remedied by an order directing partial compliance. *Matter of Grand Jury Impaneled January 21, 1975,* 529 F.2d 543, 549 (3d Cir. 1976).

■ Moreover, Goldenberg argues that turning over the papers would be tantamount to an authentication of them. However, this argument overlooks the fact that Goldenberg, holding these papers as the representative of Trademark, does not enjoy the Fifth Amendment privilege. Further, for the act of turning over of records to be testimonial and authenticative, there must be some question of the records' existence. However, since the Trademark records' existence and possession by Goldenberg is a foregone conclusion, turning them over does not rise to the level of testimony within the protection of the Fifth Amendment. *Fisher v. United States,* 425 U.S. 391, 411, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976). The purpose of the subpoena is to examine the records to search for shifting of profits out of the partnership, not to determine if the partnership possessed records and papers. The motion is denied.