**INTERSTATE COMMERCE COMMISSION, Appellee,**

v.

**James R. GOULD, doing business as Brokers for Agricultural Cooperative Associations, Appellant.**

**Civ. A. No. 78–220.**

United States District Court,
W. D. Pennsylvania,
Civil Division.

Sept. 24, 1981.

M. Faith Angell, Philadelphia, Pa., for appellee.

Donald J. Willy, Pittsburgh, Pa., for appellant.

## OPINION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

### OPINION

SIMMONS, District Judge.

The Interstate Commerce Commission (ICC) originally commenced the present action in this Court on March 1, 1978. The Commission filed suit against James R. Gould, doing business as Brokers for Agricultural Cooperative Associations, seeking an injunction to compel the production of business records for inspection.

The original purpose of the ICC inquiry was to determine if the business of James R. Gould (Gould) was subject to the Interstate Commerce Act, and if so, whether he had violated or was violating any provision of the Act. Gould, in his answer, asserted that an injunction should not be issued because: (1) The ICC lacked statutory authority to inspect his business records since his business was exempt from the jurisdiction of the Commission; (2) The requests for the production of records were made in bad faith; and (3) The records were protected by the Self Incrimination Clause of the Fifth Amendment.

After hearing arguments from both sides, this Court granted summary judgment in favor of the ICC enjoining Gould from refusing to produce or permit access to his transportation related records.

Gould promptly appealed the case to the United States Court of Appeals for the Third Circuit. See *ICC v. Gould*, 629 F.2d 847 (3rd Cir. 1980).

The Court of Appeals addressed three broad categories of issues as follows: (1) Whether the ICC has jurisdiction to conduct its investigation and thus obtain inspection of Gould's papers; (2) whether the ICC has followed the procedures required by statute and case law; and (3) whether the Constitution nevertheless shields certain of Gould's records from disclosure.

As to the first question presented, the Court of Appeals held that under the circumstances of this case the ICC had statutory jurisdiction to inspect Gould's records which he kept as a sole proprietorship, and further, the ICC was authorized to use the summary provisions of the applicable statute to seek a court injunction to compel Gould to permit an inspection of said records.

As to the second question raised, the Court of Appeals held that the ICC had complied with the mandated procedures required by the applicable statute that would ordinarily have permitted this Court to have compelled the broker Gould to submit to an inspection of the books and records of Gould's sole proprietorship by the use of this Court's injunctive power.

The third question raised by the Court of Appeals, as to whether the United States Constitution shielded certain of Gould's sole proprietorship records from ICC inspection, if Gould should properly invoke his Fifth Amendment privilege against self incrimination, was not answered by the Court of Appeals. The Appeals Court held that the record in the District Court was insufficient to determine the answer to the third question because there was no evidence in the lower court record that would reveal the true legal nature of the ICC's proposed investigation of Gould's sole proprietorship records. In order to develop a proper record, the District Court was directed to hold an evidentiary hearing in order to determine whether the inspection practices of the ICC resembled a subpoena-summons procedure or whether they were similar to a search and seizure procedure.

If the proposed ICC's inspection of Gould's sole proprietorship records were found to resemble a subpoena-summons procedure where there are elements of testimonial compulsion, then Gould would be entitled to a Fifth Amendment privilege which would protect him from being required to turn over any sole proprietorship papers to the ICC which would tend to incriminate him.

On the other hand, if the ICC's inspection procedure resembled or could be analogized as being similar to that of a search and seizure situation where there are no elements of testimonial compulsion present, the Fifth Amendment protection would not be applicable and Gould would be compelled to turn over all of his sole proprietorship records to the ICC, irrespective of any possible incrimination.

In summary, the Court of Appeals remanded the case back to the District Court to determine via an evidentiary hearing whether the ICC's procedure more closely resembled a subpoena-summons procedure or a search and seizure procedure, in order to properly address the third question which was presented to but unanswered by the Court of Appeals.

Gould thereupon petitioned the United States Supreme Court for a Writ of Certiorari in this matter, which subsequently was denied. See: *ICC v. Gould*, 629 F.2d 847, cert. denied, *Gould v. ICC*, —— U.S. ——, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981).

After the case was remanded to this District Court for further proceedings, the ICC discovered that the same James R. Gould involved in this litigation, had incorporated a business entity in Kansas (on July 9, 1979) after this litigation had begun, known as BACA, Inc.

However, Gould continued to assert in this litigation that he was also doing business simultaneously as a sole proprietorship in Pittsburgh, Pennsylvania, as BACA, or in the more formal name of "Brokers for Agricultural Cooperative Associations".

In Gould, at 862, the Circuit Court stated:

If the ICC demonstrates that BACA is in fact not a sole proprietorship or that some person other than Gould has possession of BACA's records, then the injunction previously issued by the District Court would be appropriate because under *Bellis [v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974)] or *Colucci [In re Grand Jury Empanelled*, 597 F.2d 851 (3 Cir. 1979)] respectively, the Fifth Amendment would be inapplicable.

After learning that Gould also was conducting his business in a corporate name "BACA, Inc.", the ICC served a *subpoena duces tecum* on Gould requesting his business books, records and Form 1120 Income Tax returns for all corporate entities owned by him.

The required evidentiary hearing was subsequently conducted to afford counsel for both sides the opportunity to present evidence that provided a factual basis for this court to determine: (1) Whether Gould was doing business as BACA, as a sole proprietorship, or as a corporation, or as both; (2) Whether Gould, if doing business as a sole proprietorship had the sole possession of the sole proprietorship records; (3) What was the character and type of the ICC's visitorial investigative inspection procedure; and (4) Which records, if any, should be turned over to the ICC in the light of this Court's findings as to Questions 1, 2 and 3. This Court addressed these issues to determine if the Fifth Amendment privilege may be exercised by Gould in order to protect any or all of his business records from disclosure to the ICC.

Prior to the evidentiary hearing, a sworn affidavit of Gould was introduced into evidence which on its face supports Gould's assertion that BACA is a sole proprietorship, as distinguished from BACA, Inc. The affidavit was originally made by Gould in opposition to a motion filed by the ICC for summary judgment after it learned of the creation of BACA, Inc. Subsequent to the case being remanded to this Court by the Court of Appeals, the ICC obtained a certified copy of the Articles of Incorporation of BACA, Inc. from the Office of the Secretary of State, State of Kansas. The articles identified Gould as the incorporator of the corporation. The ICC moved for summary judgment arguing that due to the incorporation of the sole proprietorship, BACA, Inc. was in fact the only business involved in this matter and so Gould was barred from claiming a Fifth Amendment privilege as to his business records. Gould, through the affidavit, sought to establish

that BACA was still a viable sole proprietorship, and was a separate entity from BACA, Inc., one of his corporate businesses.

Gould's statements in the affidavit are that:

1) BACA is a Pennsylvania sole proprietorship which is registered under the fictitious name statute in Pennsylvania;

2) BACA, Inc. is a Kansas Corporation which is not registered to do business in Pennsylvania;

3) Both of the companies are controlled by Gould;

4) BACA operates independently from BACA, Inc.;

5) Separate bank accounts, record books, business records, and scope of operations are maintained for each of his businesses, most particularly BACA, Inc. and BACA; and

6) All business records for BACA, the sole proprietorship, remain in the custody of the sole proprietorship.

At the time scheduled for the evidentiary hearing, Gould was directed to produce all the business records of BACA, the sole proprietorship, *in camera* so as to resolve the dispute of its separate existence and his right to assert a privilege. In addition, the Court required Gould to produce for inspection by the ICC all the business records of BACA, Inc. because no privilege could extend to those records. See *Gould* at 858. This Court conducted an *in camera* inspection of both corporate and sole proprietorship business records by reviewing income tax statements, general ledger sheets and other business documents of both business entities. In addition, the Court heard oral testimony from several witnesses. It was the conclusion of this Court in answer to the first two questions based upon its review of these records, the Gould supporting affidavit, and oral testimony at the evidentiary hearing, that BACA, i. e., Brokers for Agricultural Cooperative Associations, is a sole proprietorship operating as a separate entity from BACA, Inc., and that Gould is the sole possessor of the said sole proprietorship business records as well as the sole

possessor of the corporate records. The next question addressed by this Court at the evidentiary hearing was whether the ICC's inspection procedures resembled a subpoena-summons practice.

■ Where circumstances compel an individual to testify or produce documents against his own interest, the Fifth Amendment privilege against self-incrimination may be invoked. The presence of testimonial compulsion triggers the Fifth Amendment privilege and can be considered the distinguishable factor between the subpoena-summons practice and the search and seizure practice. Consequently, the manner and procedure employed by the ICC in obtaining business records from individuals during a visitorial inspection determined whether Gould may claim the protection of the Fifth Amendment for such sole proprietorship's business records that might tend to incriminate him.

Raymond T. Jones, Chief of the Investigation Branch of the Office for Consumer Protection of the ICC, offered testimony explaining the procedure used by an ICC investigator during a visitorial inspection. According to Jones' testimony, there are primarily two methods of conducting an inspection. In the first method, an agent identifies himself to the carrier and/or the individual in charge whose records are to be inspected, states the purpose of the inquiry and requests all relevant business records. The individual custodian usually will ask the agent which records he specifically wishes to inspect. The agent then specifies which records he must review as part of the inspection. Freight bills and bills of lading are representative of the type of documents usually requested by the ICC investigator. After this verbal exchange, the individual escorts the agent to the room where the carrier maintains the requested documents and identifies the location of the requested relevant business records. The agent sorts through the records, examines the documents, and makes the appropriate determination as to their relevancy to his investigation. If additional records must be exam-

ined to complete the inspection, the agent will ask the individual custodian where those records are kept so he may examine them.

The other method of inspection centers around the carrier's desire not to have the office disturbed which can occur when ICC agents sort through the business records. The carrier, in this instance, through the record custodian or clerk, will identify and produce for inspection all the necessary business records. If during the course of the inspection the agent believes other documents must also be reviewed, he will request their production from the custodian of the same until he is fully granted access to all of the necessary records for his investigation.

■ Jones' testimony revealed that the ICC procedure in effect compels the possessor of the business records to assist in the discovery and production of documents sought by the ICC. Such compliance requires the possessor of the records to aid the investigator in the discovery of information that might cause the possessor to be incriminated, which amounts to testimonial compulsion. This Court therefore concluded at the evidentiary hearing, that the procedures employed in an ICC visitorial inspection more closely resembled those involved in subpoena or summons procedures than the practices involved in a search and seizure situation.

This Court's conclusion is further substantiated by the ICC's Investigation Manual Section I, Chapter 2, titled "Access to Records." Subsection (3) of that chapter states in relevant part:

Ordinarily a subpoena should be used after visitorial rights have been asserted and the carrier has refused access. In addition, a subpoena should be used to secure records of shippers or other entities not directly regulated by the Commission.

Subpoenas are issued by the Chairman of the Commission and are requested through headquarters. The Regional Counsel must prepare, or ask you to prepare a memo from the Director of the Office of Consumer Protection to the Chairman outlining briefly the facts of the investigation and the reason why a subpoena is required to gain access. This memo is accompanied by the subpoena itself, which must describe the specific documents sought for examination.

The subpoena must describe "with particularity" the documents requested. The regulatory purpose in investigating the carrier will determine just how broad the subpoena will be, but it should always be as specific as possible.

The visitorial powers of an ICC investigator, as set forth in 49 U.S.C. § 11144(b), (1981), authorizes the inspection and copying of any transportation-related record as well as lands, buildings and equipment.

§ 11144(b) The Commission or any employee designated by the Commission, may on demand and display of proper credentials—

1. Inspect and examine the lands, buildings and equipment of a carrier, broker or lessor; and

2. Inspect and copy any record of

a) a carrier, broker, lessor or association;

b) a Person controlling, controlled by, or under common control with a carrier if the Commission considers inspection relevant to that person's relation to, or transaction with that carrier; and

c) a person furnishing cars or protective service against heat or cold to or for a rail or express carrier if the Commission prescribed the form of that record.

Additionally, identified categories of records are required to be maintained and retained for specific minimum lengths of time. 49 C.F.R. §§ 1220.1–10 (1979).

The federal regulations do not require that the carrier notify the ICC as to the exact location of the records. In actuality, the spectrum of records and the size of the business may necessitate record-keeping at several sites. The regulations do require, however, that a custodian be designated and that the records be maintained in a manner to permit ready identification and

availability to Commission representatives. 49 C.F.R. §§ 1220.2(a), 1220.3 (1979). (Underlining supplied for emphasis.)

Accordingly, this Court has concluded an ICC statutory inspection procedure resembles a subpoena-summons procedure, and so Gould may assert a Fifth Amendment privilege for those specific documents or categories of documents concerning the sole proprietorship which he can demonstrate to this Court would tend to incriminate him. (The Court of Appeals held that Gould was not entitled to successfully make a blanket Fifth Amendment objection as to the disclosure of any and all of his sole proprietorship records even if the ICC procedure resembled the subpoena-summons procedure. See 629 F.2d at 861.)

## FINDINGS OF FACT

1. This Court finds as a fact that BACA also known as "Brokers for Agricultural Cooperative Associations", is a Pennsylvania sole proprietorship with specifically identifiable books and records owned by James R. Gould and the same are in his possession.

2. This Court finds as a fact that BACA, Inc. is a Kansas Corporation which is owned, controlled and operated by James R. Gould and which corporation has specifically identifiable books and records which are in the possession of James R. Gould.

3. This Court finds as a fact that the BACA, sole proprietorship operates separately and independently from BACA, Inc.

4. This Court finds as a fact that the character of and type of the ICC's visitorial and investigative inspection resembles a subpoena-summons procedure and does not in any way resemble a search and seizure procedure.

5. This Court after an *in camera* and careful inspection of each of the BACA sole proprietorship books and records, brought into Court and demanded by the ICC, finds as a fact that all of said books and records would be relevant evidence against James R. Gould in a criminal prosecution against him if such prosecution should be brought by the U.S. Department of Justice against the said James R. Gould for violating the provisions of the Interstate Commerce Act. See Revised Interstate Commerce Act, 49 U.S.C. §§ 11901–11917 (1981), and particularly 49 U.S.C. § 11914.

## CONCLUSIONS OF LAW

1. That James R. Gould is entitled to successfully assert his Fifth Amendment privilege against self-incrimination as to all of the books and records of the BACA sole proprietorship that are in his custody and possession for the reason that each and every one of the books and records could be used to incriminate him as an alleged violator of the Interstate Commerce Act if he were to be prosecuted by the United States Department of Justice.

2. That James R. Gould cannot properly assert a privilege against self-incrimination as to any of the books and records owned by BACA, Inc. and/or of any other corporation which he possesses and/or controls and which corporate books and records are in the control, custody and possession of James R. Gould and/or any other person, and which books and records were subpoened by the ICC.

## ORDER

AND NOW, this 24th day of SEPTEMBER, 1981, it appearing to this Court that the said James R. Gould has given the ICC all of the corporate books and records to which it has been entitled to receive pursuant to law, and

FURTHER, it appearing to the Court that James R. Gould has at the time of the evidentiary hearing asserted his Constitutional privilege to withhold specifically identified books and records of his sole proprietorship from ICC inspection, and

FURTHER, it appearing to the Court that as to each specific request of the ICC as to the books and records of said BACA sole proprietorship, the assertion of the Constitutional privilege of James R. Gould to withhold said BACA sole proprietorship books and records from ICC inspection was upheld, and

IT FURTHER appearing to this Court that the mandate issued it in this case by the United States Court of Appeals has been fully executed in accordance with the terms of said mandate.

NOW THEREFORE, IT IS THE ORDER OF THIS COURT, that the within proceeding is to be marked closed immediately by the Clerk of this Court, and that this case shall be closed as of this date and shall remain closed, subject to being reopened only for cause shown.