**In the Matter of GRAND JURY EM-PANELLED MARCH 19, 1980 United States of America, Appellant.**

No. 81–1782.

United States Court of Appeals, Third Circuit.

Argued Feb. 17, 1982.

Decided June 10, 1982.

William W. Robertson, U. S. Atty., Newark, N. J., for appellant; Samuel A. Alito, Jr., Asst. U. S. Atty., Maryanne Trump Desmond, Executive Asst. U. S. Atty. (argued), Newark, N. J., on brief.

Richard T. Philips (argued), DeCotiis & Philips, P.A., Newark, N. J., for appellee; George G. Frino, Newark, N. J., on brief.

Before ADAMS and SLOVITER, Circuit Judges, and VanARTSDALEN, District Judge.*

## OPINION OF THE COURT

ADAMS, Circuit Judge.

The United States appeals from a district court order quashing, subject to a limited exception, a number of grand jury subpoenas duces tecum. The wide-sweeping subpoenas, if enforced, would require a sole proprietor, who is a target of the grand jury's investigation, to produce a host of records allegedly pertaining to his business and in his possession and control. Aside from those records required to be kept by law, the district judge, citing the protection against self-incrimination afforded by the fifth amendment, declined to direct that the requested documents be made available to the grand jury. We affirm.

I

This appeal arises out of an investigation by a federal grand jury in New Jersey into corruption relating to the awarding of county and municipal contracts. A portion of the investigation focused on the appellee,[1] who, according to the United States, operated as a sole proprietor several companies that did business with various units of local government. In November and December 1980, the appellee received five separate subpoenas duces tecum, which commanded him to appear before the grand jury and produce certain documents. Specifically, the appellee was directed to provide the jurors with numerous records relating to two of appellee's companies, including ledgers, journals, workpapers, vouchers, bank statements, contracts, corporate minutes, etc.;[2] "all records, including but not limited to bank statements, cancelled checks, check stubs and deposit tickets" connected with specified bank accounts of the appellee or his companies; and the tele-

---

* Honorable Donald W. VanArtsdalen, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. At oral argument, it was requested that, because of the ongoing nature of the grand jury inquiry, the Court not disclose either the name of the appellee or any identifying details relating to the investigation. Hence, throughout this opinion, the person against whom the grand jury subpoenas were directed will be referred to as "the appellee."

2. For example, the grand jury subpoena of December 19, 1980, directed "[a]ny authorized Officer or Representative" of one of the appellee's companies to "testify before the Grand Jury and bring with you any and all books, records and documents as per the attached Schedule A for the period January 1, 1976 to present." The items requested under Schedule A of the subpoena are:

| | | | |
|---|---|---|---|
| 1. | General ledgers. | 14. | Financial statements |
| 2. | General journals. | 15. | Bank deposit tickets. |
| 3. | Cash disbursement journals. | 16. | Retained copies of income tax returns. |
| 4. | Cash receipts journals. | 17. | Retained copies of payroll tax returns. |
| 5. | Vouchers. | 18. | Purchase journals |
| 6. | Paid bills. | 19. | Accounts payable ledgers. |
| 7. | Invoices. | 20. | Accounts receivable ledgers. |
| 8. | Billings. | | |
| 9. | Bank Statements | 21. | Stock Transfer book. |
| 10. | Cancelled checks and check stubs. | 22. | Corporate minutes. |
| 11. | Payroll records. | 23. | Corporate charter. |
| 12. | Contracts and copies of contracts. | 24. | Correspondence and memoranda. |
| 13. | Subcontracting agreements and purchase orders. | 25. | Bids, Bid bonds and contracts. |

phone toll records of certain businesses. The appellee moved to quash the subpoenas on fifth amendment grounds.

The district judge conducted two hearings before ruling on the appellee's motion. Counsel for the United States conceded, for purposes of the argument, that "all the corporations described in the subpoenas are sole proprietorships," and that the subpoenaed records "are in [the appellee's] hands." Additionally, the Government admitted that the documents it sought to obtain "will or may incriminate" the appellee. *See* note 17 *infra.*

In an opinion and order dated February 4, 1981, the district court granted substantially all the relief sought by the appellee. The court reasoned that, "[a]lthough the Fifth Amendment does not protect the records of corporations, unincorporated associations or partnerships, a sole proprietor can invoke the privilege to his benefit." The court then determined that the fifth amendment right of the appellee would be infringed were he forced to turn over the various subpoenaed documents, inasmuch as the appellee thereby would be compelled to make an incriminating testimonial communication. In this connection, the district judge observed that "the [mere] *act* of producing the documents has communicative aspects which warrant Fifth Amendment protection.... [E]nforcement of the subpoenas would compel [the appellee] to admit that the records exist, that they are in his possession, and that they are authentic." The court accordingly granted the appellee's motion to quash, except as the motion related to those subpoenaed items, such as tax returns and W–2 statements, that are required by law to be kept or to be disclosed to a public agency.

After its motion for reconsideration was denied, the United States filed a timely appeal. We have jurisdiction under 18 U.S.C. § 3731, which has been held to authorize an appeal by the Government from a district court order quashing a grand jury subpoena duces tecum. *See In re Grand Jury Empanelled (Colucci),* 597 F.2d 851, 854–58 (3d Cir. 1979).

## II

We proceed to analyze the scope of protection under the fifth amendment available to a sole proprietor whose records and papers have been subpoenaed by a grand jury. Our inquiry in this regard is fourfold: (A) Can the fifth amendment privilege be invoked by a sole proprietor in response to a subpoena for his business-related records? (B) If so, under the particular circumstances of this case, would compelled production of the subpoenaed documents amount to an incriminating testimonial communication, thereby entitling the appellee to take refuge in the protection afforded by the amendment? (C) Did, as the United States contends, the appellee fail to qualify for that protection by proffering an overly-broad motion to quash? (D) And, even if the appellee prevails with respect to the previous questions, can the Government nonetheless compel production of the requested records by suggesting that the act of their surrender be "immunized"?

## A

As has often been noted, the constitutional privilege against self-incrimination is "essentially a *personal* one, applying only to natural individuals," *United States v. White,* 322 U.S. 694, 698, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944) (emphasis added). The privilege, consequently, cannot be asserted by a collective group, such as a corporation or a union, or by a representative, employee, or agent of a collective group. Employing this principle, the Supreme Court has refused to recognize a claim of fifth amendment protection with respect to individually held records of corporations, *Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); labor unions, *United States v. White, supra*; organizations, *McPhaul v. United States,* 364 U.S. 372, 81 S.Ct. 138, 5 L.Ed.2d 136 (1960); political parties, *Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951); and partnerships, *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). "[A]n individual cannot rely upon the privi-

lege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." *Bellis, supra,* 417 U.S. at 88, 94 S.Ct. at 2182.

From this, the United States urges that the appellee should be obligated to turn over the documents requested here, however incriminating, for the same reasons that an individual in possession of corporate or partnership records is required to comply with a grand jury subpoena. The Government maintains that "it would be anomalous to hold that a corporation or partnership, no matter how small or personal, enjoys no fifth amendment rights, while a sole proprietorship, no matter how large and impersonal, is shielded from producing business records." Brief for Appellant at 13.

Although the Government's position has considerable analytic appeal,[3] it is clear that, under the present state of the law, the fifth amendment may be invoked by a sole proprietor regardless of the magnitude of his business. In *Bellis, supra,* the Supreme Court made it clear that, in evaluating a fifth amendment claim, the critical factor was not the *size* of the organization the records of which were being subpoenaed, but rather the *nature* of the capacity—either personal or representational—with respect to which the privilege was claimed. The *Bellis* Court drew "a bright line between organizations which have 'a recognizable juridical existence apart from [their] members,'" such as *corporations or partnerships,* and "those which do not," such as sole proprietorships. *In re Grand Jury Empanelled (Colucci), supra,* 597 F.2d at 859 (quoting *In re Grand Jury Investigation,* 483 F.2d 961, 962 (3d Cir. 1973), *aff'd, Bellis,*

*supra* ). While extending the *Wilson* line of cases to a partnership, on the ground that a partnership constituted an "organized, institutional activity," 417 U.S. at 92, 94 S.Ct. at 2185, the Justices explicitly declined to conclude that the same would be true with respect to sole proprietorships:

> It has long been established, of course, that the Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony. . . . *The privilege applies to the business records of the sole proprietor or sole practitioner as well as to personal documents containing more intimate information about the individual's private life.* *Id.* at 87–88, 94 S.Ct. at 2182 (emphasis added).

In a straightforward application of *Bellis,* this Court rejected a previous effort on the part of the United States to construe the fifth amendment so as to distinguish between, for example, a small, family-operated sole proprietorship, and a large, corporate-like solely owned entity. Judge Garth, writing for the Court, noted that the decisional law clearly did not support such a distinction:

> An individual who holds records in a representative capacity for a collective entity (e.g. a corporation, union or partnership) may not assert a Fifth Amendment privilege when he is compelled to produce those records. On the other hand, a sole proprietorship has no legal existence apart from its owner, and such records *may* be protected from disclosure by the Fifth Amendment.

*In re Grand Jury Empanelled (Colucci), supra,* 597 F.2d at 859. *See also In re Grand*

---

**3.** As the Court of Appeals for the First Circuit recently observed, if "[o]nly the personal self-created business records in the possession of a sole proprietor or practitioner . . . enjoy a privilege against subpoena," and "only because of the form of business organization chosen by their creator," such a rule would create "an irrational hole in the constitutional system of regulation of crime detection and would provide the individual with a remedy far exceeding the scope of his constitutional privilege." *In re*

*Grand Jury Proceedings (Martinez),* 626 F.2d 1051, 1056 (1st Cir. 1980). The court proceeded to recommend that prosecutors make use of various immunity statutes, in order to "[h]armoniz[e] the government's right of lawful access to the contents of personal business records with the possessor's right not to have the testimonial implications of his submission used against him." *Id.; see* Part II(D) of this opinion, *infra.*

*Jury Subpoena (Kent),* 646 F.2d 963, 968 (5th Cir. 1981) ("[t]he fifth amendment protection applicable to a sole proprietor's business records is the same as the protection applicable to the records of an individual").

■ As the United States concedes, the appellee operates a number of sole proprietorships. Following *Bellis* and *In re Grand Jury Empanelled (Colucci),* therefore, we conclude that the case law dealing with documents held by representatives of a collective group does not defeat the appellee's claim of privilege under the fifth amendment. 597 F.2d at 859. Accordingly, we proceed to consider whether that claim should be honored, in view of the particular circumstances of this case.

## B

Before *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the prevailing rule was that "the Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony," *Bellis, supra,* 417 U.S. at 87, 94 S.Ct. at 2182. This principle, which had its genesis in the English tradition,[4] was endowed with constitutional status nearly a century ago, when the Supreme Court held that "any forcible and compulsory extortion of a man's own testimony or of his private papers to be used as evidence to convict him of crime" violated the fifth amendment. *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886). "Papers are [the owner's] . . . dearest property," the Court reasoned; forcing their production "would be subversive of all the comforts of society." *Id.* at 627–28, 6 S.Ct. at 530–31.

Prior to *Fisher,* an unbroken line of cases repeated the axiom that an individual's private papers were protected from compelled disclosure by the fifth amendment. *See Fisher, supra,* 425 U.S. at 419–20, 96 S.Ct. at 1585 (Brennan, J., concurring in the judgment) (citing cases). Among the more

prevalent rationales for this principle was the notion that "the protection of personal privacy is a central purpose of the privilege against compelled self-incrimination," and that personal privacy, properly understood, extended to the private written word as well as to the private unspoken thought; after all, under a contrary rule, "[t]he ability to think private thoughts, facilitated as it is by pen and paper, and the ability to preserve intimate memories would be curtailed through fear that those thoughts or the events of those memories would become the subjects of criminal sanctions however invalidly imposed." *Id.* at 416, 420, 96 S.Ct. at 1583, 1585 (Brennan, J., concurring in the judgment).

In *Fisher,* the majority seemingly diverged from these precedents. Justice White, writing for himself and five other Justices, noted that "[s]everal of *Boyd's* express or implicit declarations have not stood the test of time," asserted that "[t]he pronouncement in *Boyd* that a person may not be forced to produce his private papers" had been repeated in subsequent decisions as mere "dictum," and concluded that "the prohibition against forcing the production of private papers has long been a rule searching for a rationale consistent with the proscriptions of the Fifth Amendment against compelling a person to give 'testimony' that incriminates him." 425 U.S. at 407–09, 96 S.Ct. at 1579–1580. By focusing on the precise words of the amendment— *viz,* that "[n]o person . . . shall be *compelled* in any criminal case to be a *witness against himself,"* *id.* at 396, 96 S.Ct. at 1573 (emphasis by the Court)—the Justices arrived at a three-factor restatement of the applicability of the privilege against self-incrimination: the fifth amendment, rather than existing to shield certain private writings from discovery by the Government, "applies only when the accused is compelled to make a *testimonial* communication that is *incriminating,"* *id.* at 408, 96 S.Ct. at 1579. In effect, the focus of the Court had shifted

---

**4.** *See* the cases and authorities cited by Judge Hunter in *In re Grand Jury Proceedings (Johanson),* 632 F.2d 1033, 1043–44 (3d Cir. 1980).

from privacy to the process of compulsion. *See* Note, *The Rights of Criminal Defendants and the Subpoena Duces Tecum: The Aftermath* of Fisher v. United States, 95 Harv.L.Rev. 683, 683 (1982).

Applying the new test to the facts of the *Fisher* case, the Court concluded that requiring a defendant-taxpayer to produce an accountant's workpapers in the taxpayer's possession [5] would not violate the fifth amendment, regardless of how incriminating those papers might be to the taxpayer, because "the privilege protects a person only against being incriminated by his own compelled testimonial communications." 425 U.S. at 409, 96 S.Ct. at 1580. In *Fisher*, the accountant's workpapers did not belong to the taxpayer, were not prepared by him, and contained no testimonial declaration by him; for that matter, inasmuch as their preparation was "wholly voluntary," the records "cannot be said to contain compelled testimonial evidence, either of the taxpayers or of anyone else." *Id.* at 409–10, 96 S.Ct. at 1580.

The Court in *Fisher* recognized, however, that there were two situations where "[t]he act of producing evidence in response to a subpoena" could be said to have "communicative aspects of its own, wholly aside from the contents of the papers produced." 425 U.S. at 410–13, 96 S.Ct. at 1580–1582. First, the act of producing documents in some instances might amount to an admission of the existence of such documents and their possession or control by the taxpayer. Second, the act of production might resemble the act of testimonial self-incrimination if responding to a subpoena would in some sense "authenticate" the documents produced. *See United States v. Beattie*, 522 F.2d 267, 270 (2d Cir. 1975) (Friendly, J.) ("[a] subpoena demanding that an accused produce his own records is . . . the equivalent of requiring him to take the stand and admit their genuineness"). Because neither of these situations was present in *Fisher*,[6] however, the Court reiterated its conclusion that the fifth amendment did not prevent the Government from obtaining, through subpoena, an accountant's workpapers in the possession of a taxpayer or his attorney.[7]

5. Actually, the workpapers were not in the taxpayer's possession, but rather in the hands of his attorney, to whom the subpoena had been directed. The Court considered the status of the records in the taxpayer's hands, however, inasmuch as "[s]ince [the] taxpayer transferred possession of the documents in question from himself to his attorney, in order to obtain legal assistance, . . . the papers, if unobtainable by summons from the client, are unobtainable by summons directed to the attorney by reason of the attorney-client privilege." 425 U.S. at 405, 96 S.Ct. at 1578.

6. In *Fisher*, there was no fear that compliance with the subpoena might provide the Government with the taxpayer's useful admission that he was aware and in possession of the requested documents. The Government knew that the accountant's workpapers existed and knew where they were located; therefore, the question was not one "of testimony but of surrender." Moreover, inasmuch as it is not illegal to seek accounting advice, the taxpayer's mere possession of these papers did not of its own accord pose "any realistic threat of incrimination to the taxpayer." 425 U.S. at 411–12, 96 S.Ct. at 1581. The problem of implicit authentication also was not present in *Fisher*: because the taxpayer, under the relevant rules of evidence, was not competent to authenticate the accountant's workpapers, his mere produc-

tion of those papers "express[es] nothing more than the taxpayer's belief that the papers are those described in the subpoena." 425 U.S. at 413, 96 S.Ct. at 1582.

7. In the aftermath of *Fisher* and *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) (holding that the seizure of papers, either public or private, pursuant to a valid search warrant, does not violate the fifth amendment, inasmuch as their possessor was not compelled "to aid in the discovery, production, or authentication of incriminating evidence," *id.* at 474, 96 S.Ct. at 2745), a number of commentators assumed that the Court had sounded the death-knell for the *Boyd* private-papers rule. *See, e.g.*, C. Whitebread, Criminal Procedure: An Analysis of Constitutional Cases and Concepts 279–80 (1980) ("By adhering to a narrow concept of what constitutes compulsion, instead of to the policies underlying the right, the Supreme Court has stripped the protection of the privilege from books and papers, the written counterpart of the 'inviolable human personality' "); Gerstein, *The Demise* of Boyd: *Self-Incrimination and Private Papers in the Burger Court*, 27 U.C.L.A.L.Rev. 343 (1979); Note, *Formalism, Legal Realism, and Constitutionally Protected Privacy Under the Fourth and Fifth Amendments*, 90 Harv.L. Rev. 945 (1977). In fact, however, as discussed

Fortified with this precedential perspective, we turn to a consideration of the dispute at bar. There can be little doubt that, had the grand jury subpoenas at issue here been directed to the appellee's *personal* papers, his assertion of the fifth amendment would be in order. To be sure, the Supreme Court in *Fisher* explicitly left open the *Boyd* question, *viz,* "[w]hether the Fifth Amendment would shield the taxpayer from producing *his own* tax records [as opposed to an accountant's workpapers] in his possession." 425 U.S. at 414, 96 S.Ct. at 1582 (emphasis added). But this Court, in accord with the Second Circuit,[8] already has concluded that the fifth amendment privilege applies, even after *Fisher,* to an individual's production of his private papers in response to a subpoena. In *In re Grand Jury Proceedings (Johanson),* 632 F.2d 1033 (3d Cir. 1980), relying primarily on *Boyd* and its progeny, we concluded—or, more accurately, reaffirmed our conclusion in light of *Fisher*—that one of the purposes of the fifth amendment was to ensure an individual's right "to a private enclave where he may lead a private life" (quoting *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964)).[9] Noting that no case as of yet had held that the fifth amendment did not protect an individual's personal papers from compelled production, Judge Hunter observed that the "failure to continue to preserve this right, which we believe basic, would be a step backward in what has been a long and bitterly contested battle to accord rights to persons who stand accused of crime." 632

F.2d at 1044 & n.23. Accordingly, the Court declined to enforce a subpoena that sought to obtain an individual's private pocket diaries. *In re Grand Jury Proceedings (Johanson),* then, at least until overruled by an in banc Court, forecloses consideration of whether the appellee's private papers are subject to subpoena by a grand jury.

It would appear from the face of the subpoenas that nearly all of the appellee's records demanded by the Government are of a business, as opposed to a personal, nature, although the district court has made no finding on this score. The United States argues that, whatever the protection afforded by the courts to personal documents, the business records of a sole proprietorship should not be immune from compelled production for purposes of a criminal investigation. The Government stresses that no showing has been made that any of the documents subpoenaed here were prepared by the appellee, and contends that the items requested are of the type obtained, pursuant to subpoena, from corporations and partnerships. *See United States v. Osborn,* 561 F.2d 1334, 1338–39 (9th Cir. 1977) (holding that the compelled production of certain of an individual's business documents "involves no testimonial self-incrimination").

Our recent decision in *ICC v. Gould,* 629 F.2d 847 (3d Cir. 1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981), however, would appear to blunt this angle of attack, at least in this Circuit. Although *Gould* is not strictly analogous,[10]

in the text *infra,* the Court declined to decide the "private papers" issue of *Boyd.* Moreover, lower federal courts, including this Court, have continued to recognize *Boyd's* protection-of-private-papers principle. *See In re Grand Jury Proceedings (Johanson),* 632 F.2d 1033, 1044 n.23 (3d Cir. 1980) ("Although some commentators have predicted the demise of this fifth amendment right, . . . we explicitly reject this prophecy"); Note, *The Rights of Criminal Defendants and the Subpoena Duces Tecum: The Aftermath of Fisher v. United States,* 95 Harv. L.Rev. 683, 692–94 (1982).

**8.** *See In re Grand Jury Subpoena Duces Tecum* (April 23, 1981), 657 F.2d 5, 8 n.1 (2d Cir. 1981), *decision on remand,* 522 F.Supp. 977, 979 (S.D.

N.Y.1981); *United States v. Beattie,* 541 F.2d 329, 331 (2d Cir. 1976).

**9.** *But see* Note, *The Rights of Criminal Defendants and the Subpoena Duces Tecum: The Aftermath of Fisher v. United States, supra* note 7, at 692–94 (criticizing *In re Grand Jury Proceedings (Johanson)* as "inconsistent with *Fisher,*" inasmuch as "the change in fifth amendment jurisprudence seems to leave no room for an exception based on a privacy rationale").

**10.** *Gould* involved the validity of administrative investigatory procedures. Nonetheless, in that part of the opinion with which we are concerned, the Court assumed that the ICC could proceed only to the extent permitted by the

the Court there squarely considered the applicability of the fifth amendment privilege with respect to the business records of a sole proprietor. Judge Garth, speaking for the Court, began by quoting *Bellis* to the effect that "[t]he privilege applies to the business records of the sole proprietor or sole practitioner as well as to [his] personal documents." 629 F.2d at 858 (quoting *Bellis, supra,* 417 U.S. at 87–88, 94 S.Ct. at 2182). While recognizing that this "sweeping" *Bellis*-derived-from-*Boyd* rule may have been undercut by *Fisher,* the opinion nonetheless concluded that the rule still was good law:

> [W]here the records are not those of a collective entity, and are not held in a representative capacity, but are rather records of an individual proprietorship not separate or distinct from the sole proprietor, . . . neither *Bellis* nor any case to date holds that such records are without the individual proprietor's fifth amendment privilege.

629 F.2d at 859 (footnote omitted). The Court took pains to note that "*Fisher,* . . . *Bellis,* and the cases cited therein may well presage a trend toward elimination of the fifth amendment privilege for all business records, even when the proprietor is required to produce and thus implicitly authenticate them." Nevertheless, *Gould* declared, "such a final break with *Boyd* is not for us to make. *As we read the Supreme Court's most recent pronouncements, the fifth amendment still affords [a sole proprietor] . . . the same protection for [the proprietorship's] business papers as he claims for his own personal papers.*" *Id.* at 859 n.22 (emphasis added). *See also In re Grand Jury Subpoena (Kent),* 646 F.2d 963,

968 (5th Cir. 1981); *In re Oswalt,* 607 F.2d 645, 647–48 (5th Cir. 1979). *Gould,* then, stands for the proposition that an individual's business papers, as well as his personal records, cannot be subpoenaed by a grand jury.[11]

Furthermore, even if *Johanson* and *Gould* were construed more narrowly than we have read them, compelling the appellee, under the circumstances of this case, to respond to the grand jury's subpoenas would bring about an impermissible incriminating "testimonial communication," as that concept is defined and employed in *Fisher.* To be sure, the documents requested here, like those sought in *Fisher,* were voluntarily prepared, and therefore "cannot be said to contain compelled testimonial evidence" in and of themselves. *See Fisher, supra,* 425 U.S. at 409–10, 96 S.Ct. at 1580. But the Supreme Court in *Fisher* went to great lengths to demonstrate that, in certain situations, the very act of producing subpoenaed records might amount to an incriminating declaration. *See id.* at 410–13, 96 S.Ct. at 1580–82; *see also id.* at 430–34, 96 S.Ct. at 1590–92 (Marshall, J., concurring in the judgment). And such a situation, we believe, is present in the dispute at bar.

In *Fisher,* the Supreme Court stressed that the accountant's workpapers in the taxpayer's possession did not belong to the taxpayer, were not prepared by him, and did not contain his testimonial declaration. Obviously, such cannot be said about the documents in the present controversy, inasmuch as the papers the appellee seeks to protect belong to him and in all likelihood contain (possibly incriminating) declarations by him. More to the point, however, is the

---

fifth amendment. It was necessary, therefore, for the Court to consider the protection afforded by that amendment to a sole proprietor's business records.

**11.** We recognize that language in *In re Grand Jury Empanelled (Colucci),* 597 F.2d 851, 862 (3d Cir. 1979)—which, it should be realized, predated *Gould*—can be read to limit the availability of the fifth amendment privilege with respect to business records. The *holding* in that case, however—that the business records of a sole proprietor *in the possession of another*

*person* can be subpoenaed by a grand jury—is entirely consistent with the result we reach today. The documents sought by the grand jury here, unlike those demanded in *Colucci,* are in the possession of the appellee; and, clearly, "[i]t is the holder of the papers, rather than the owner, who is subjected to governmental compulsion by a *subpoena duces tecum,* and therefore only the holder of the papers may assert that the *subpoena* violates his right under the Fifth Amendment." 597 F.2d at 862.

district court's observation that forcing the appellee to produce his papers under the circumstances present here would give rise to "communicative aspects of its own" (quoting *Fisher*, 423 U.S. at 410, 96 S.Ct. at 1580). The mere act of producing the documents may be considered a communication having testimonial significance as "an admission that the subpoenaed records exist" (quoting *In re Grand Jury Empanelled (Colucci), supra*, 597 F.2d at 861), or as a "belief that the papers are those described in the subpoena" (quoting *Fisher*, 425 U.S. at 410, 96 S.Ct. at 1580). In *Fisher*, "[t]he existence and location of the papers [was] a foregone conclusion and the taxpayer add[ed] little or nothing to the sum total of the Government's information by conceding that he in fact ha[d] the papers." 425 U.S. at 411, 96 S.Ct. at 1581; *see also United States v. Praetorius*, 622 F.2d 1054, 1062–63 (2d Cir. 1979), *cert. denied*, 449 U.S. 860, 101 S.Ct. 162, 66 L.Ed.2d 76 (1980) (ordering production of document because its existence and location were known by the Government). In the matter *sub judice*, however, we find nothing in the record that would indicate that the United States knows, as a certainty, that each of the myriad documents demanded by the five subpoenas in fact is in the appellee's possession or subject to his control. The most plausible inference to be drawn from the broad-sweeping subpoenas is that the Government, unable to prove that the subpoenaed documents exist—or that the appellee even is somehow connected to the business entities under investigation[12]—is attempting to compensate for its lack of knowledge by requiring the appellee to be-

come, in effect, the primary informant against himself. *See* Note, *The Rights of Criminal Defendants and the Subpoena Duces Tecum: The Aftermath of Fisher v. United States, supra*, at 685 n.23 ("a subpoena duces tecum is the only alternative when authorities are unsure of the existence or the location of evidence"). As we read *Fisher*, however, this the fifth amendment does not permit the Government to do.

Moreover, disclosure would contravene the concern evidenced in *Fisher* that persons not be compelled to authenticate self-incriminating documents. In *Fisher*, the Court noted that the accountant's workpapers could be authenticated only by the accountant; thus, "[t]he documents would not be admissible in evidence against the taxpayer without authenticating testimony" in any event, *Fisher*, 425 U.S. at 413, 96 S.Ct. at 1582. Here, however, many (although certainly not all) of the subpoenaed records—such as, for example, the ledgers, journals, contracts, correspondence, and memoranda—most likely were prepared by the appellee. The record contains no explanation by the United States as to how documents of this sort could be authenticated without the appellee's explicit or implicit participation.[13] As the district court observed in this connection,

> the government can give no assurances that the act of turning over the documents will not constitute incriminating admissions against [the appellee] either before the grand jury or at a subsequent trial, if he is indicted. The government argues that the existence, possession and

---

**12.** At oral argument, counsel for the appellee asserted that the Government hitherto has been unable to establish a connection between the appellee and the businesses with respect to which documents were sought by the grand jury. To the extent, then, that ordering the appellee to comply with the subpoenas would furnish the United States with a "missing link" in its evidentiary chain—*i.e.*, information that the appellee in fact operates the businesses and holds the bank accounts under review—a further incriminating testimonial communication would arise.

**13.** *See In re Grand Jury Proceedings (Martinez)*, 626 F.2d 1051, 1055 (1st Cir. 1980) ("In many cases, . . . the authentication of the document, which may be proven by an official's testimony that he received them from the individual who prepared and possessed them, will provide a necessary link to incriminating evidence contained in the documents"); *United States v. Plesons*, 560 F.2d 890, 892–3 (8th Cir. 1977) (incriminating documents that could have been protected, had fifth amendment privilege properly been asserted, were introduced at trial and identified as records seized from the defendant).

authenticity of the documents can be proved without [the appellee's] testimonial communication, but it cannot satisfy this court as to how that representation can be implemented to protect [the appellee] in subsequent proceedings.

Appendix at 98 (footnote omitted). Under these circumstances, we are unable to say, as did the Court in *Fisher*, that responding to the subpoenas "would not appear to represent a substantial threat of self-incrimination." 425 U.S. at 413, 96 S.Ct. at 1582.

■ Accordingly, we hold, therefore, that enforcement of these subpoenas would result in a compelled testimonial communication, an outcome neither compatible with the fifth amendment nor consonant with *Fisher*.[14] Our decision in no way impinges on the legitimate investigatory activities of law enforcement officials. For example, many of the records sought from the appellee in this case no doubt could be obtained by the Government from other sources. Similarly, the appellee would have no right to invoke the fifth amendment if the documents involved were not in his actual or constructive possession. *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). Nor could he complain if the documents had been prepared by or obtained from a third party, *Fisher*, or if they were seized from his office by investigators bearing valid warrants, *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49

L.Ed.2d 627 (1976). In this case, however, the Government in effect asks the *appellee himself* to provide it with any and all documents in his possession that might incriminate himself. It is precisely this sort of expedition that the fifth amendment traditionally has been interpreted to prevent.[15]

### C

Rather than identifying specific documents the production of which might prove to be incriminating, the appellee interposed a fifth amendment objection with respect to all of the documents subpoenaed by the grand jury. In *Gould, supra*, we observed that "a blanket citation of the privilege against self-incrimination will not suffice as a valid claim of the privilege." 629 F.2d at 861. The United States contends that the appellee's "blanket" assertion of any fifth amendment rights he might have violates the rule announced in *Gould*.[16]

■ There are a number of appropriate responses to the Government's position. *Gould* was a civil case, and the authorities cited therein for the above-quoted proposition also were civil cases. *See, e.g., National Life Insurance Co. v. Hartford Accident & Indemnity Co.*, 615 F.2d 595, 596 (3d Cir. 1980) ("a witness in a *civil* proceeding may not invoke a blanket fifth amendment privilege") (emphasis added). In the criminal context, however, "the proponent of a fifth amendment privilege is required 'to move

---

14. *In re Grand Jury Empanelled (Markowitz)*, 603 F.2d 469 (3d Cir. 1979), relied upon by the United States, is not to the contrary. That case, following and applying the rule of *Fisher*, found no testimonial communication where an individual was compelled to turn over potentially incriminating business documents which he allegedly held in his capacity as an attorney for certain clients, *id.* at 477. The situation in *Markowitz*, therefore, bears more resemblance to those in *Bellis* (where partnership records were deemed to be held in a representational capacity) and in *Fisher* (where the taxpayer attempted to protect records that he had not prepared and of which he had not retained possession) than it does to the matter under consideration here (inasmuch as the appellee's assertion of the fifth amendment is made in a personal, as opposed to a representational, capacity, and is made with respect to documents allegedly in his possession and control).

15. Nothing in the above discussion should be taken to cast doubt upon the district court's holding—which we affirm—that those subpoenaed documents in the appellee's possession which are required either to be kept by law or to be disclosed to a public agency should be produced for the grand jury's inspection. *See Shapiro v. United States*, 335 U.S. 1, 33, 68 S.Ct. 1375, 1392, 92 L.Ed. 1787 (1948); *In re Grand Jury Proceedings (McCoy)*, 601 F.2d 162, 168–71 (5th Cir. 1979). Indeed, the appellee does not even contest this point.

16. The record in this case does not contain a written motion to quash by the appellee. We suggest that future appellate review of questions relating to the possible overbreadth of motions to quash would be greatly assisted if such requests were preserved in written form.

forward only to the limited extent requisite' to show that the privilege is properly claimed." *In re Grand Jury Empanelled (Markowitz)*, 603 F.2d 469, 477 (3d Cir. 1979) (quoting *In re United States v. Hoffman Can Corp.*, 373 F.2d 622, 628 (3d Cir. 1967)). More important, the Government already has conceded that all of the papers it seeks are potentially incriminating.[17] Additionally, the appellee contends, and correctly we believe, that even if he originally did advance a blanket objection, in any event that problem no longer remains, inasmuch as the district court compelled the production of all records required to be kept by law, thereby reducing the contested documents to those business records kept privately by the appellee and alleged by the Government to be incriminating. In sum, it is our view that, in the context of the present dispute, the appellee did not improperly assert his fifth amendment rights.[18]

### D

Finally, the United States argues that the district court erred in not compelling the appellee to produce the subpoenaed documents subject to "the functional equivalent of use immunity with respect to the act of production." Under this arrangement, presumably the appellee would turn over the requested records to the Government, which in turn would be obligated not to use the appellee's act of production against him in any way.

We are unpersuaded by the Government's proposition. As the appellee stresses, although the Government, on a number of occasions, suggested to the district court that there were means by which the appellee's act of production could be immunized, no procedure ever was agreed upon and no formal immunization offer under 18 U.S.C. § 6002 or § 6003 was advanced. Given this failure on the part of the Government to identify with particularity the immunity proposal it envisioned,[19] we cannot say that the district court erred in rejecting this approach, especially in view of the court's finding that "the government can give no assurances that the act of turning over the documents will not constitute incriminating admissions against [the appellee] either before the grand jury or at a subsequent trial." Appendix at 98; *see United States v. Garcia*, 544 F.2d 681, 685 n.4 (3d Cir. 1976).

Because "no party requested the district court to award such immunity," and in view of the Court's traditional reluctance "to intrude into an area which should be more appropriately left to prosecutorial discretion," *see In re Grand Jury Matter*, 673 F.2d 688, 695–96 (3d Cir. 1982) (Sloviter, J., concurring), we decline to reach the more general question whether an award of use immunity by the Government, designed to override an individual's fifth amendment privilege with respect to potentially incriminating documents in his possession, is permissible under the Constitution.[20]

---

17. *See* Transcript of proceeding (Jan. 12, 1981). Appendix at 29:

> THE COURT: Do you also concede that the documents which you seek will or may incriminate [the appellee]?
> MR. ULWICK (for the United States): Yes, your Honor.

18. Although the point may be obvious, we note that this appeal does not involve the question of the appropriate showing required of an individual who invokes the fifth amendment in response to a court order directing the production of documents, thereby risking the possibility of that person's citation for civil contempt. *See, e.g., United States v. Rylander*, 656 F.2d 1313, 1318–20 (9th Cir. 1981), *cert. granted*, —— U.S. ——, 102 S.Ct. 2006, 72 L.Ed.2d 464 (1982).

19. Even on this appeal, the United States has described only vaguely the contours of any such immunity arrangement. In its brief, the appellant argues that the possibility

> the grand jury would draw adverse inferences from [the appellee's] act of production ... *could* be eliminated ... by requiring [the appellee] to turn over the documents to the district court, to the prosecutor, a federal agent, *or* his own attorney.... *Alternatively*, the grand jury *could* be instructed by the court *or* by the prosecutor to draw no inferences from the act of production.

Brief for Appellant at 16–17 (emphasis added).

20. *See In re Grand Jury Proceedings (Martinez)*, 626 F.2d 1051, 1056–59 (1st Cir. 1980) (remanding to allow prosecution opportunity to immunize authentication implicit in the act of

### III

For the foregoing reasons, the order of the district court will be affirmed.

production of documents); *see also* Note, *supra* note 9, at 688–92 (commenting favorably on the First Circuit's immunity approach). It could be argued, however, that the immunity arrangement emphasizes only the authentication concern identified in *Fisher*, while misprizing the concern that on occasion the act of production itself could constitute a testimonial communication. Justice Marshall elaborated upon this point in his *Fisher* concurrence:

> The Court's theory will also limit the prosecution's ability to use documents secured through a grant of immunity. If authentication that the document produced is the document demanded were the only testimony in-

herent in production, immunity would be a useful tool for obtaining written evidence.... The Court's recognition that the act of production also involves testimony about the existence and possession of the subpoenaed documents mandates a different result. Under the Court's theory, if the document is to be obtained the immunity grant must extend to the testimony that the document is presently in existence. Such a grant will effectively shield the contents of the document.

*Fisher, supra,* 425 U.S. at 433–34, 96 S.Ct. at 1591–92 (Marshall, J., concurring in the judgment).