**RESOLUTION TRUST CORPORATION,**
Petitioner,

v.

**Pedro Ramon LOPEZ and Teresa**
**Saldise, Respondents.**

Misc. A. No. 92–146.

United States District Court,
District of Columbia.

May 5, 1992.

Order on Reconsideration May 13, 1992.

Suzanne Rigby, Sr. Atty., Resolution Trust Corp., John H. Korns, Paul M. Laurenza, James E. Topinka, Pettit & Martin, Washington, D.C., for Resolution Trust Corp.

Daniela Winkler, Karen Zacharia, Karen Peck, Williams & Connolly, Washington, D.C., for respondent in Lopez/Saldise.

## MEMORANDUM

OBERDORFER, District Judge.

The Resolution Trust Corporation ("RTC") moves for enforcement of two subpoenas *duces tecum* targeted at two former directors or officers of a failed Florida savings and loan. The subpoenas seek tax returns, bank statements, insurance policies, and several other categories of personal financial records reflecting the sources and amount of respondents' assets. The RTC alleges that it served the subpoenas on November 30, 1991, and has not received any response. Respondents argue that they were not served with the subpoenas, and that, in any event, the very act of producing the documents and the documents' contents are protected by the Fifth Amendment privilege against self-incrimination. The Court heard argument on the RTC's petition on April 30, 1992. For the reasons stated below, the Court will grant RTC's petition to enforce the subpoenas, but will stay enforcement for a period of twenty days and transfer the action to the Southern District of Florida, without prejudice to respondents' seeking further consideration of this order in that court.

The RTC is investigating potential civil claims arising from the failure of General Federal Savings Bank in Miami, Florida. As part of that investigation, the RTC issued two identical subpoenas *duces tecum* directed toward respondents Lopez and Saldise, former directors or officers of General Federal who are husband and wife. According to the RTC's affidavits, the subpoenas were served on an unidentified adult male at respondents' residence on November 30, 1991. Mr. Lopez also has filed an affidavit, in which he avers that the two subpoenas were not served on him. However, respondents have not attempted to

controvert the RTC's claim that the subpoenas were in fact delivered to *someone* at the respondents' residence, or that both respondents have actual knowledge of them. Thus, the service issue is disposed of by applicable FDIC regulations,[1] which provide that "[s]ervice of a subpoena may be made by personal service, by delivery to an agent, by delivery to a person of suitable age and discretion at the subpoenaed person's residence ... or in such other manner as is reasonably calculated to give actual notice." 56 Fed.Reg. 37,979 (Aug. 9, 1991) (to be codified at 12 C.F.R. § 308.-11(d)). At a minimum, the affidavits show that the subpoenas were left with an adult at respondents' residence, which showing is sufficient under the regulation. Accordingly, respondents' service claim does not provide any basis for denying enforcement.

Respondents argue that they have "reasonable cause" to believe that documents produced in response to the subpoenas might be used against them in a criminal prosecution. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); *Butcher v. Bailey,* 753 F.2d 465, 470 (6th Cir.), *cert. dismissed,* 473 U.S. 925, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985). This claim is amply supported by the fact that the Office of Thrift Supervision already has brought allegations of misrepresentation and misapplication of funds against the respondents in the Southern District of Florida, and by regulations which require the RTC to refer possible evidence of any criminal violations to the United States Attorney. 12 C.F.R. § 563.-180(d). As a result, the respondents essentially assert that the privilege must apply to all thirty-four categories of documents sought by the subpoenas.

■ At the outset, however, it seems clear that category 1, the respondents' federal and state tax returns and associated schedules and exhibits, are "required records" that are outside the scope of the privilege. *Shapiro v. United States,* 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948); *OTS v. Zannis,* Misc. No. 90–0136, 1990

U.S.Dist. LEXIS 10591 (D.D.C. Aug. 14, 1990). Accordingly, the Court will immediately enforce that portion of the subpoenas, and will order respondents to produce all such documents to the RTC forthwith.

■ As for the remaining categories of documents, respondents are protected by the Fifth Amendment privilege if the act of producing those documents is both "testimonial" and "incriminating." *Fisher v. United States,* 425 U.S. 391, 410, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976). For instance, where admitting the existence, possession, or authenticity of documents would itself be an incriminating fact, the privilege has been held to be applicable. *See United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984). In the present case, it is simply not clear from the record before the Court that the act of producing documents would incriminate the respondents. It does appear that here, as in *Zannis,* "the purpose of the investigation is not to establish ownership or existence of the papers," in which case the mere act of production is not likely to incriminate respondents. In any event, blanket assertions of the privilege are disfavored, *see Zannis,* and at least one district court has required the respondent "to specify, as to each document, the basis of [the] asserted Fifth Amendment privilege." *FSLIC v. Hardee,* 686 F.Supp. 885, 886 (N.D.Fla. 1988). Thus, in light of the respondents' failure to make a more detailed showing of how the privilege applies to the requested documents, the Court is inclined to grant the RTC's petition to enforce the two subpoenas in full.

At the same time, the Court is mindful that determination of the privilege question "depend[s] on the facts and circumstances of particular cases." *Fisher,* 425 U.S. at 410, 96 S.Ct. at 1580. It appears that the best way to ascertain the facts and circumstances of this case and ultimately to ensure that the respondents' interests are protected would be an *in camera* review of the requested documents, such as the one conducted in *Hardee.* 686 F.Supp. at 886.

---

1. Since the RTC has not yet promulgated its own regulations on service of subpoenas, it is authorized to employ FDIC regulations and procedures. *See* 12 U.S.C. § 1441a(a)(7).

Given that the documents at issue are located in Florida, the most efficient venue for such review is the Southern District of Florida, the district in which respondents reside and where this action might have been brought. Accordingly, while the Court will order respondents to produce the remaining thirty-three categories of documents, it will transfer this action under 28 U.S.C. § 1404(a) for the convenience of the parties and in the interest of justice, and also will stay enforcement of that order for twenty days. Once the case has been transferred to the Southern District of Florida, the respondents may seek reconsideration of the accompanying Order in that court. Nothing in the ruling here should prejudice any contention by the respondents for review of this ruling in general or with respect to particular documents which respondents consider to be privileged by operation of the Fifth Amendment.[2]

### ORDER

Upon consideration of the RTC's petition to enforce subpoenas *duces tecum* served on the respondents, and for the reasons stated in the Court's Memorandum of this same date, it is hereby

ORDERED, that the RTC's petition is GRANTED, and the subpoenas shall be enforced in full. It is further

ORDERED, that respondents shall produce forthwith all tax documents described in category 1 of the subpoenas. It is further

ORDERED, that enforcement of the remainder of the subpoenas shall be stayed for a period of twenty days. It is further

ORDERED, that this action shall be transferred forthwith to the Southern District of Florida, without prejudice to respondents' seeking reconsideration there of

this Order, either in general or with respect to particular documents.

IT IS SO ORDERED.

### ORDER

On May 5, 1992, this Court issued an Order granting the RTC's motion to enforce two subpoenas *duces tecum,* directing respondents Lopez and Saldise to produce forthwith the tax returns and attached schedules and exhibits described in category 1 of those subpoenas, staying enforcement of the remainder of the subpoenas for twenty days, and transferring this case forthwith to the Southern District of Florida. On May 7, the Clerk of Court effected the transfer to the Southern District of Florida. On May 8, respondents moved here for reconsideration or a stay pending appeal of that portion of the Court's decision which required them to produce the tax returns and attached schedules and exhibits. The Court conducted a conference call on the motion on May 13, and now issues the following rulings.

The May 5 Order held that the respondents' tax returns and the associated schedules and exhibits were subject to disclosure under the "required records" doctrine articulated by the Supreme Court in *Shapiro v. United States,* 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948). Under *Shapiro* and its progeny, certain records will fall outside the scope of the Fifth Amendment privilege against self-incrimination if they are required to be kept as part of a regulatory scheme, and they " 'have assumed "public aspects" which render them at least analogous to public documents.' " *FSLIC v. Rodrigues,* 717 F.Supp. 1424, 1426 (N.D.Cal.1988) (quoting *Grosso v. United States,* 390 U.S. 62, 67–68, 88 S.Ct. 709, 713–714, 19 L.Ed.2d 906 (1968)). Respon-

---

**2.** Respondents also have asserted that the *contents* of the documents are protected by the Fifth Amendment privilege, citing *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). The Court notes in passing that in the wake of *Doe,* which held that the contents of voluntarily created business records are not privileged, *Boyd* no longer appears to be good law. 465 U.S. at 610 n. 8, 104 S.Ct. at 1240 n. 8.

It is even less likely that *Boyd* is good law in this Circuit. *See In re Sealed Case,* 877 F.2d 83, 84–85 (D.C.Cir.1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 839, 107 L.Ed.2d 834 (1990) (Fifth Amendment privilege "does not cover the *contents* of any voluntarily prepared records, including personal ones," only the act of their production.).

dents now argue that application of this doctrine to income tax returns is contrary to the Seventh Circuit's decision in *United States v. Porter*, 711 F.2d 1397, 1404 (7th Cir.1983), as well as Justice Department policy, both of which, according to respondents, mandate that "the 'required records' doctrine should not be applied to tax returns." Motion for Reconsideration at 3.

However, after reviewing the materials cited and considering the arguments made by counsel, I remain unpersuaded that income tax returns are protected by the Fifth Amendment privilege. Both the *Porter* decision and the Justice Department manual discuss "tax records," a term that, in context, applies solely to the personal financial records underlying the filed return. In *Porter*, the IRS had subpoenaed a taxpayer's cancelled checks and deposit slips that served as the basis for his filed returns, disclosure of which was not at issue. The court held that these papers did not have the requisite "public aspects" for disclosure under *Shapiro*, and that they thus were protected by the Fifth Amendment. 711 F.2d at 1405. Similarly, while the Justice Department manual does not elaborate on the meaning of "privately kept tax records," the cases cited by it for the proposition that such records are protected all deal with taxpayers' books and other privately kept financial records.[1] U.S. Dep't of Justice, *Tax Division Manual for Criminal Trials* 103 (1973). Respondents' authorities do not squarely address the issue decided in the May 5 Order. Moreover, the only decision cited to the Court that squarely addresses the issue of whether tax returns are required records holds that they meet the *Shapiro* test and must be disclosed. *Rodrigues*, 717 F.Supp. at 1426–27. This decision is consistent with decisions of other courts, including this Court, which have ordered disclosure of tax returns, albeit without such detailed reasoning. *In re Grand Jury Empanelled*

*March 19, 1980*, 541 F.Supp. 1 (D.N.J.1981), *aff'd*, 680 F.2d 327 (3d Cir.1982), *aff'd in part, rev'd in part on other grounds sub nom. United States v. Doe*, 465 U.S. 605, 608 n. 3, 104 S.Ct. 1237, 1239 n. 3, 79 L.Ed.2d 552 (1984); *OTS v. Zannis*, Misc. No. 90–0136, 1990 U.S.Dist. LEXIS 10591 (D.D.C. Aug. 14, 1990).

At the same time, recognizing respondents' need for appellate review of this issue, the Court will vacate the portion of the May 5 Order which requires disclosure of the tax returns "forthwith," and will stay enforcement of category 1 of the subpoenas until May 25, 1992, the date when the balance of the Order will be enforced. Further, in light of the fact that the case has been transferred, the ruling requiring disclosure of category 1 material—like the ruling on the other thirty-three categories of documents—will be without prejudice to respondents' seeking reconsideration, or entry of a final judgment and a stay pending appeal, by the transferee court. While the RTC argues that this issue should be severed from the Florida case and any appeal taken here, expeditious handling of this matter can be more easily achieved by a single filing in the Florida court and, if necessary, invocation of emergency procedures in the Court of Appeals there, than by re-transferring a portion of the record between two Courts of Appeals, at least one of which will soon be in recess. Accordingly, it is hereby

ORDERED, that the portion of the May 5 Order which required respondents to produce their tax returns and attached schedules and exhibits "forthwith" is vacated, and enforcement of that portion of the subpoenas will, like the balance of the May 5 Order, be stayed for twenty days from the date of that Order, or until May 25, 1992. It is further

---

1. It is true that in *Hill v. Philpott*, 445 F.2d 144, 145 n. 1 (7th Cir.), *cert. denied*, 404 U.S. 991, 92 S.Ct. 533, 30 L.Ed.2d 542 (1971), "copies of federal income tax returns" were one of a number of items listed in a search warrant at the taxpayer. However, it is unclear whether such copies actually were seized by the govern-

ment, and there certainly is no indication that the court gave consideration to whether tax returns, unlike the bulk of the "personal books and records" that were seized, had "public aspects" sufficient to bring them under the required records doctrine of *Shapiro*.

ORDERED, that the respondents' motion for reconsideration or for entry of a final judgment and a stay pending appeal from this Court is DENIED, without prejudice to the respondents' seeking reconsideration or entry of a final judgment and a stay pending appeal from the transferee court.

IT IS SO ORDERED.

DATED: May 13, 1992.